Shannahan v. Commonwealth.

CASE 10—INDICTMENT—DECEMBER 13.

# Shannahan v. Commonwealth.

APPEAL FROM JEFFERSON CIRCUIT COURT.

1. IF ONE IS INSANE, AND WHILE IN THAT CONDITION COMMITS AN OFFENSE, he is not responsible, for the reason that he is not enabled to know right from wrong; and, if he kills, does not know that to take human life is wrong; or, as has been held in cases of moral insanity, when from the existence of some of the natural propensities in such violence it is impossible not to yield to them.

2. VOLUNTARY DRUNKENNESS NEITHER EXCUSES THE OFFENSE NOR MITIGATES THE PUNISHMENT.

But voluntary drunkenness, that merely excites the passions and stimulates men to the commission of crime, in a case of homicide by one in such a condition, without any provocation, neither excuses the offense nor mitigates the punishment.

3. PROOF OF DRUNKENNESS IS COMPETENT ON THE QUESTION OF MALICE.—In this case the court say: "We are not to be understood, however, as determining that the fact of drunkenness in a case like this is incompetent testimony before a jury upon the question of malice."

4. MALICE, EXPRESS OR IMPLIED, MUST BE PROVEN in order to constitute the crime of murder; and in the absence of this proof no conviction can be had for such an offense; and evidence as to the condition of the accused at the time of the killing, whether drunk or sober,

should be permitted to go to the jury, in connection with the other facts, in determining the question of malice.

5. THE JURY SHOULD NOT BE TOLD THAT DRUNKENNESS MITIGATES THE OFFENSE.—The fact of drunkenness, while it may be a circumstance showing the absence of malice, should not be singled out from the other proof and the jury told that it mitigates the offense.

6. *The proper rule is,* that one in a state of voluntary intoxication is subject to the same rule of conduct, and to the same rules and principles of law, that a sober man is; and that where a provocation is offered, and the one offering it is killed, if it mitigates the offense of the man drunk, it should also mitigate the offense of the man sober.

7. *Smith v. Commonwealth* (1 Duvall, 224) *and Blimm v. Commonwealth* (7 Bush, 320) *are overruled.*—The court say: "We feel that public policy, the demands of society, and, more than all, the wisdom and justice of the law require that the principles herein established should be adhered to; and as a different construction is placed by many upon the law as declared by this court in the cases of Smith v. Commonwealth (1 Duvall, 224) and Blimm v. Commonwealth (7 Bush, 320), they are overruled so far as they conflict with the principles of this opinion."

A. H. FIELD, . . . . . . . . . . For Appellant,

CITED

Wallace, jr., 127, United States v. Harding.
1 Archbold's Criminal Practice, 671.
10 Georgia, 101, Davis v. The State.
5 Georgia, 441, Holmes v. The State.
7 Bush, 320, Blimm v. Commonwealth.
7 Bush, 676, Donnellan v. Commonwealth.

JOHN RODMAN, Attorney-General, . . . . For Appellee,

CITED

1 Duvall, 224, Smith v. Commonwealth.
5 Bush, 366, Kriel v. Commonwealth.
Russell on Crimes, 421–425.

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

The appellant, Matthew Shannahan, was indicted in the Jefferson Circuit Court for the murder of C. W. Montgomery, and under the indictment was tried by a jury and found guilty

as charged, and by the judgment of that court condemned to be hung, and from that judgment he prosecutes this appeal.

It will be necessary to recite, in substance, the facts proven upon the trial in order to determine the propriety of the refusal by the court below to give certain instructions asked for by counsel for the appellant, and the giving of instructions in lieu thereof.

It appears from the evidence that the appellant, on the 22d of August, in the year 1870, about twelve or one o'clock of that day, announced his intention of going to see Montgomery (the deceased) for the purpose of getting his (appellant's) stone-hammer, saying " that Montgomery had taken it away." The appellant had been informed that the deceased was working for a man by the name of Shanks. He went to the grocery of Shanks and inquired for Montgomery, and was told that he was in the woods at work some half mile distant from the house. While at Shanks's he took a dram, purchased a quart of whisky, and started in the direction of the woods where Montgomery was at labor, and upon his arrival there found Montgomery and a man by the name of Applegate at work. The appellant and the deceased, as the witness Applegate states, met each other in a friendly manner, and engaged in conversation relative to deceased having previously worked for him, and appellant offered to employ him again. The three drank the quart of whisky, and late in the evening returned to Shanks's grocery, where they took another drink and had the quart-bottle refilled. Applegate left them late, and says that when he left they were still friendly and drinking. The appellant and deceased left Shanks's house after night, and went in company to Brown's residence, where deceased was boarding, and reached there about half past eight o'clock at night. From Shanks's house to Brown's is a distance of about five hundred yards. Upon their arrival at Brown's he refused to permit the appellant to remain all night; but upon

the suggestion of the deceased, that if he persisted in refusing he would sleep with appellant in the stable, Brown consented that the appellant might remain all night. The two then entered the family-room of Brown, placed the quart-bottle of whisky on the mantel, with about one third of its contents gone, and conversed with Brown fifteen or twenty minutes. They then left by a stairway for their bed-room upstairs, and when they reached the floor above Brown says he heard a scuffle and fall, and Montgomery cried out, " *You have killed me.*" He hurried to the room and met the appellant coming down the stairway with a knife in his hand, and witness ordered him not to leave. He made his escape through the back door leading to the rear of witness's premises, and was in a few days afterward arrested. The witnesses found Montgomery badly cut upon the arms, legs, and other parts of the body, and his entrails protruding. He lived but a short time; stated that Shannahan had killed him without cause. The deceased had no weapons upon his person, and so far as the circumstances indicate offered no resistance. The evidence establishes the fact that the appellant when sober is a quiet, peaceable, and industrious man, but when drunk is boisterous, unruly, and always when in that condition ready to attack friend or foe. There is no doubt from the proof but that both the appellant and the deceased were under the influence of liquor at the time of the killing.

The appellant's counsel relies in his argument upon five different grounds for the reversal of this case:

1. Because the verdict is against the evidence.

2. An improper effort upon the part of the attorney for the commonwealth to convict the accused.

3. That the special judge had no power to pronounce the judgment upon the verdict.

4. That the court misinstructed the jury.

5. That the court refused properly to instruct the jury.

This court has no power to revise a judgment of conviction for either the first, second, or third grounds relied upon by counsel, and the only question presented by the record is, did the court err in refusing the instructions asked for by appellant's counsel, and in giving other instructions in lieu thereof? Counsel insists that the instructions given in this case are *multitudinous, misleading, and inapplicable.* While instructions given to a jury upon such an issue as is here presented should be as plain and concise as possible, and no more in number than the case requires, still the defendant's counsel asked twenty-two instructions, and the court, in lieu of and in explanation of these instructions, gave about one half the number, the most of which contain the law of the case, and were certainly not prejudicial to the appellant.

The effort upon the part of the defense, from the legal propositions submitted to the jury, was to reduce the offense from murder to manslaughter by reason of appellant's intoxicated condition at the time of the killing. The propriety of the instructions on this branch of the case will alone be considered, as all the other instructions given by the court are substantially correct.

Instruction No. 9 given by the court in behalf of the appellant is as follows: "That if at the time of the alleged commission of the crime charged in the indictment the accused was from sensual gratification and social hilarity, and not with the design of committing a crime, under the influence of whisky to such an extent as to seriously interfere with or deprive him of reason, they should find him not guilty of murder, but, if guilty at all, of voluntary manslaughter, unless they believe from the evidence he drank with the intention of committing the deed with which he is charged. In which case he would be guilty of murder."

Instruction No. 10 is as follows: "If at the time of the killing the defendant was intoxicated from the use of whisky, and

said intoxication was not feigned or simulated, nor contracted with the intention of committing the deed, and the killing was prompted by the intoxication alone, and except for it could not have occurred, you should find him not guilty of murder, but, if guilty at all, of voluntary manslaughter."

The counsel for appellant insists that the following instruction should have been given without containing any of the qualifications embraced in instructions Nos. 9 and 10, viz.: " *That if at the time of the killing the defendant was intoxicated from the use of whisky, and the killing was prompted by it alone, and except for it would not have occurred, you should find the accused not guilty of murder, but, if guilty at all, of voluntary manslaughter.*"

In the opinion of this court, if drunkenness can be pleaded in excuse for crime, or by way of mitigating the punishment on account of crime, we perceive no valid reason for withholding from the consideration of a jury such an instruction as asked for by the counsel for the appellant in a case like this.

It was a settled rule of the common law that voluntary drunkenness excused no man from the commission of crime; and instead of palliating the offense it was held as an aggravation of the wrong committed. Some of the more recent American authorities upon this subject have greatly relaxed this rule, and gone so far as to establish as law the reverse of the proposition, viz.: " That voluntary drunkenness, instead of aggravating the offense, is such a mitigating fact as to lessen the punishment;" and upon an indictment for murder, in the absence of any proof showing that intoxication was resorted to in order to enable the party charged to take human life, the fact of *drunkenness itself* is held sufficient to reduce the crime from murder to manslaughter. By the statute law of Kentucky drunkenness is made an offense for which a penalty may be imposed; and, although drunkenness is in violation of good morals as well as the law of the land, it may be proper, out

of charity to the passions of men and their inability to control in many instances either their passions or appetites, not to adhere to the rigorous rule of the common law, and add to the punishment of a party who by committing a penal offense places himself in such a condition as causes him to commit a still greater offense.    But while we sanction this modification of the common law doctrine, we are well satisfied that neither the interests of society nor the wisdom and justice of law requires or authorizes the judicial tribunals of the country to establish the legal principle that the violation of one law, resulting in inflaming and exciting the worst passions of men, shall be deemed a sufficient cause for mitigating the punishment to be inflicted upon those who commit great *crimes*.    *"The law of England, considering how easy it is to counterfeit that excuse (drunkenness), and how weak an excuse it is (though real), will not suffer any man thus to privilege one crime by another."* (2 Blackstone's Commentaries, 25.)    It is true that some of the recent adjudged cases qualify the principle involved by stating *"that if intoxication is resorted to for the purpose of stimulating one to the commission of a meditated felony, then there can be no mitigation of the punishment;"* but it seems to us that no man, unless he is so wanting in intellect as to make him irresponsible for his acts, would be so reckless of his own security as to announce his intention of becoming intoxicated so as to enable him to take human life or inflict punishment upon his enemy.

But, on the contrary, men of violent passions and wicked designs would avail themselves of this very principle of law, by becoming drunk in order to take the lives of their fellow-men, with the consciousness on the part of the offender that his drunkenness would be the mitigating feature of his case. The recognition of such a rule of law is but an invitation to men of reckless habits to commit crime; and while their punishment is by incarceration only in the state prison for a few

years, the sober man, whose cause for revenge and the desire to take human life therefor is kept within his own breast, for the commission of a like offense is made to suffer death. There is no reason or philosophy in a law that would hang the sober man for murder, and lessen the punishment of the man intoxicated for the same offense, because the latter had voluntarily placed himself in a condition by which he is induced to take human life.

In the present case the jury were not only told by instructions Nos. 9 and 10 that drunkenness mitigated the offense by reducing it from murder to manslaughter, but they were told by the fourteenth instruction, based upon the fact of drunkenness alone, that "if they believed appellant was insane at the time of the killing they must acquit." These instructions were all more favorable to the appellant than the law or facts of the case authorized.

If one is insane, and while in that condition commits an offense, he is not responsible, for the reason that he is not enabled to know right from wrong, and, if he kills, does not know that to take human life is wrong; or, as has been held in cases of moral insanity, where from the existence of some of the natural propensities in such violence it is impossible not to yield to them; but voluntary drunkenness, that merely excites the passions and stimulates men to the commission of crime, in a case of homicide by one in such a condition, without any provocation, neither excuses the offense nor mitigates the punishment.

We are not to be understood, however, as determining that the fact of drunkenness in a case like this is incompetent testimony before a jury upon the question of malice. Malice, express or implied, must be proven in order to constitute the crime of murder, and in the absence of this proof no conviction can be had for such an offense; and evidence as to the condition of the accused at the time of the killing,

whether drunk or sober, should be permitted to go to the jury, in connection with other facts, in determining the question of malice.   What we do adjudge is, that in the trial of a case like this the fact of drunkenness, while it may be a circumstance showing the absence of malice, should not be singled out from the other proof, and the jury told that it mitigates the offense.   The proper rule is, that one in a state of voluntary intoxication is subject to the same rule of conduct, and to the same rules and principles of law, that a sober man is; and that where a provocation is offered, and the one offering it is killed, if it mitigates the offense of the man drunk, it should also mitigate the offense of the man sober.

We feel that public policy, the demands of society, and, more than all, the wisdom and justice of the law require that the principles herein established should be adhered to; and as a different construction is placed by many upon the law as declared by this court in the cases of Smith against the Commonwealth (1 Duvall, 224), and Blimm against the Commonwealth (7 Bush, 320), involving similar questions, those cases are overruled so far as they conflict with the principles of this opinion.

The judgment of the court below is affirmed.