Shelby v. Commonwealth.

---

CASE 103—INDICTMENT—MAY 30.

## Shelby v. Commonwealth.

APPEAL FROM CARLISLE CIRCUIT COURT.

1. CONSPIRACY—EVIDENCE.—Circumstances connecting one of two persons with the commission of an offense are not competent evidence against the other, unless their acts are so connected as to show a conspiracy. The mere fact that a conspiracy is charged in the indictment is not sufficient to make such testimony competent.

2. SAME.—What was said or done by one of two co-conspirators after the

commission of the offense, not in the presence of or approved by the other, is not competent evidence against him.

3. Prejudicial Errors.—The admission of incompetent testimony may be prejudicial although excluded by instructions from the consideration of the jury.

4. No instruction as to a conspiracy should be given where the acts and circumstances proved fail to show a conspiracy.

5. The right to challenge a juror without cause arises where there are twelve men in the box competent to try the case, and while this right may be waived, the examination of the individual juror as to his fitness to try the case is not a waiver of the right.

In this case the court erred in refusing to allow the defendant's peremptory challenge of two jurors after twelve men had, upon examination, been found competent to try the case, the examination of the jurors as to their fitness to try the case not being a waiver of the right of peremptory challenge.

6. Impaneling of Jury.—After a jury had been selected, but before they were sworn to try the issue, it appeared from affidavits filed by the attorney for the Commonwealth that one of the jurymen had formed and expressed an opinion from hearing the statements of those familiar with the facts, and thereupon the entire jury was discharged, and an order made directing the sheriff to summon twenty-four jurors, including among the number the eleven jurors who had been discharged. Held—That it would have been proper, under the circumstances, to have had an entire new panel, but the failure to do so is not a reversible error.

Z. W. BUGG & SON for appellant.

P. W. HARDIN for appellee.

Briefs withdrawn.

JUDGE PRYOR delivered the opinion of the court.

On Saturday, in August, 1887, Mrs. Sallie Moore, who lived on her farm in the county of Ballard, was found murdered in her room. Her skull had been crushed with a club, and her throat cut from ear to ear, and a considerable sum of money taken from the premises by those committing this horrid crime. The murderers, it seems, ransacked the entire house, turning up the bed clothing below and in the upper rooms. They took four hundred and eighty-dollars from one pocket-book, leaving in it two hundred dollars; also

opened the bureau drawer, in which was some money; they took the money, and left two watches that belonged to her two sons.

The family of the murdered woman consisted of herself and two unmarried sons, Henry and James Moore. The two sons left the house about sunrise on the day of the murder, having gone to repair some fencing on the farm, and returning between ten and eleven o'clock of the same morning, found their mother murdered. The appellant, Ivan Shelby, who was indicted jointly with his uncle, O. M. Shelby, for this murder, had a separate trial, resulting in his conviction, with the punishment fixed at imprisonment for life. The appellant and his uncle were neighbors of Mrs. Moore, and had lived but a short distance from her during their entire lives. The appellant was a widower, living on his farm, and his uncle, a married man with several children, living on his farm that was almost in sight of the Moore place.

The indictment contains three counts. The first charging a conspiracy between the appellant and his uncle to kill and murder Mrs. Sallie Moore, and the execution of their purpose by the murder of the old woman in the manner stated; second, charging Ivan Shelby with the murder, and his uncle as present, aiding and abetting in the commission of the offense; and in third count charging O. M. Shelby with the murder, and Ivan Shelby, the appellant, as an aider and abettor. To this indictment the appellant entered his plea of not guilty. A change of venue was had to the county of Carlisle, and such was the excitement growing out of the murder that a jury could not be obtained in that county, and in order to fill the

panel, the jurors, or the most of them, were brought from the county of Hickman. Of the regular panel summoned in the county of Carlisle only four jurors were found competent to try the case, and the remaining eight jurors were selected from those who lived in an adjoining county. After the panel had been filled, but before the jury was sworn to try the issue, affidavits were filed by the attorney for the State to the effect that one of the jurymen had formed and expressed an opinion from having heard the evidence, or the statements of those familiar with the facts. The entire jury was then discharged, and an order made directing the sheriff to summon twenty-four jurors, including among the number the eleven jurors who had been discharged. To this the defense objected. While the eleven jurors were doubtless impartial men, it would have been proper, under the circumstances, to have had an entire new panel, as the facts developed in relation to the one juror may have made an unfavorable impression on the minds of the remaining eleven. The court requiring the selection of the jurors to proceed, a jury of twelve men were finally selected, after summoning other jurors from Hickman county, and whether any were chosen who constituted the jury when it was discharged does not appear, and if it did it would not be a reversible error.

After the twelve men had been proven competent jurors upon a *voir dire* examination, and before they were sworn to try the issue, the defense claimed the right to challenge, without cause, two of the jurors, and the court refused to permit this to be done, be-

cause, as is stated, the defense had already accepted them, and it was too late for a peremptory challenge. This might have been sanctioned under the former practice, but this court, in construing the provision of the Criminal Code on this point, has repeatedly held that the right to challenge without cause arises when there are twelve men in the box competent to try the case.   It is true that this may be waived, but it is not waived by an examination of the indi-vidual juror, either by the Commonwealth or the accused, as to his fitness to try the case.   "Have you formed or expressed an opinion as to the guilt or innocence of the accused, and if so, is that opinion based on the testimony or from statements made by those who were present and familiar with the facts attending the commission of the offense?"   This is one of the usual preliminary questions, and, if answered in the negative, the juror is told to take his seat, and when twelve competent men are in the box, then the right of challenge without cause begins.

When a full panel of qualified jurors is obtained the Commonwealth must accept or challenge.   If the Commonwealth declines to challenge, the jurors are passed to the defense.   (Munday v. Commonwealth, 81 Ky., 233; Jenkins v. Commonwealth, 9 Ky. Law Rep., 254.)

The court below, therefore, erred in refusing the peremptory challenge of the two jurors, and for that reason the judgment must be reversed.   If, however, the action of counsel and his client could be con-strued as waiving this right of peremptory challenge, as the attorney for the State maintains was done, still

there are errors more fatal to the prosecution than the one mentioned, and on account of which a reversal must necessarily follow.

The evidence upon which the accused has been convicted is altogether circumstantial, and the attempt to show that his uncle was *particeps criminis*, or the person who, in fact, murdered the old lady, is based on circumstantial evidence, and the verdict evidently found on the idea that the appellant was present, aiding and abetting in the commission of the offense. We have read the testimony in this case with much care, and find no such state of facts developed from the proof as would justify the conclusion that any conspiracy or agreement was entered into between the uncle and the nephew to perpetrate this horrid crime.

The only motive for its commission was to obtain the money that had been left in the house by a man by the name of Harvey for safe-keeping, and of this sum the murderers took only four hundred and eighty dollars, leaving two hundred in the pocket-book. We know it is difficult to establish an actual agreement between two or more persons to commit a felony, and, therefore, the prosecution must resort to facts and circumstances affecting each party charged, that when linked together form such a chain of proof as must convince the mind, when the act has been committed, that the parties charged understood in advance the object in view must be accomplished even to the taking of the life of a neighbor or friend if necessary. If a conspiracy is established in that way, the acts and declarations of the one made in the execution

of the common purpose will be competent evidence against the other. If, however, the act, or series of acts, done by one, and the circumstances connected with those acts are not sufficient to convict, or if they establish guilt, such acts and circumstances are not competent evidence against another unless you connect his acts and conduct with those of the one who is charged to have conspired with him to commit the offense.

The only circumstance connecting the acts of the one with the other in this case is the relationship existing between them, and, therefore, the evidence touching the guilt or innocence of the uncle should have been excluded from the jury. Nor is the declaration or admission of one, made before the commission of the offense, that the other was united with him for the purpose of doing an act that would amount to a crime when committed, sufficient to show a conspiracy, and statements made after the commission of the act that another had conspired with him to commit it are clearly incompetent against a conspirator; and any other statement affecting the question of guilt or innocence of the party under trial made after the perpetration of the felony by another in the absence of the one being tried is equally incompetent. The uncle was not on trial, and yet his statements and the circumstances connecting him with the offense were permitted to go to the jury as evidence, and must have been considered by them in making their verdict.

Mrs. Clark, a witness for the Commonwealth, was permitted to state as a witness that the uncle of the

accused in a conversation with her said : "That Mrs.
Moore's damned old throat ought to have been cut
forty years ago ; that she was a damned old liar, and
tattler and tale-bearer in the neighborhood, and that
it was a slip of the tongue that caused her throat to
be cut; that he knew she had thirteen or fourteen
hundred dollars in gold, and he was in favor of mak-
ing her sons, Jim and Henry, account for it."

It was also shown that the uncle, on a certain day,
was seen near the home of the deceased standing by
a tree with some one with him, with the defense
proving an alibi on the part of the uncle. All such
circumstances, and those of a like character, mingled
with circumstances arising, as the State insists, against
the nephew showing guilt on his part, but having no
connection with what was proven against the uncle,
the jury was allowed to consider in determining the
question of guilt or innocence on the part of the
accused. It is true guilt must be shown on the part
of the principal before you can convict one of aiding
and abetting in the commission of the offense. The
acts of the uncle, whether guilty or innocent, or be-
ing such as to create a mere suspicion of guilt on
his part, were not evidence against the accused.

All the conversations had with the uncle, and acts
done by him after the killing, not in the presence
of the accused or approved by him, were incompe-
tent. If the uncle had confessed that he committed
the murder it would have been incompetent in this
case for the purpose of connecting the accused with
the commission of the offense. The conspiracy must
be shown by the testimony, and the acts of each,

connected with other circumstances, may establish it; but when the offense has been committed, what is afterwards said or done by one of the conspirators, not in the presence of or approved by the one under trial, is incompetent, and should not go to the jury for any purpose.   The statements and conduct of the uncle, whether evidence or not of his guilt, were calculated to influence the passions and intensify a feeling that seems at that time to have taken possession of the popular mind, and such a feeling sometimes finds its way to the jury-box. unless much caution is used in the conduct of the trial.   The court told the jury that much of the testimony could only be considered as to the question of guilt on the part of the uncle, still the incompetent testimony had its effect.   It was with the jury, and as enlightened and impartial as they doubtless were, they could not help but consider it.

The act and declarations of one made in the prosecution of a common purpose to do wrong is the act of all.   It becomes a part of the *res gestæ*, and on this principle is made competent.   This doctrine is elementary, and where the acts and circumstances proven fail to show a conspiracy, no instruction should be given, based on such a ground, and the evidence of the statements, conduct and appearance of the uncle should have been excluded.   (Metcalfe, &c., v. Conner, &c., Littell's Sel. Cases, 497; Wharton on Evidence, 1205-6; State v. Frederick, 85 Mo., 145; State v. Duncan, 64 Mo., 263.)

The only question at issue in this case as the record now stands is, did the accused kill and murder Mrs.

Moore as alleged in the indictment, or aid and assist another in so doing ?

It is not proper that we should discuss the testimony in behalf of the State or that for the defense, as the case must be retried. All we can say is, we are satisfied, from the facts of this record, the accused should have another trial. It follows that the instructions in regard to a conspiracy should not have been given.

Judgment reversed, and remanded with directions to award a new trial, and for proceedings consistent with this opinion.