# DECISIONS

OF THE

# Court of Appeals of Kentucky.

## JANUARY TERM, 1901.

CASE 83—INDICTMENT FOR MURDER—JANUARY 9.

## Bishop v. Commonwealth.

APPEAL FROM KENTON CIRCUIT COURT.

PETITION FOR REHEARING GRANTED, AND REVERSED.
FOR FORMER OPINION SEE 58 S. W. REP., 817.

INDICTMENT—WAIVER OF OBJECTION—CHANGE OF VENUE—CONTINU-
ANCE—EXPERT TESTIMONY—INSANITY—IMPROPER ARGUMENT OF
PROSECUTING ATTORNEY—EVIDENCE OF ANOTHER CRIME AS MOTIVE
—DRUNKENNESS AFFECTING DEGREE OF OFFENSE.

Held: 1. The objection to an indictment that it was error, upon dis-
charging the entire grand jury, to summon a special grand jury
of bystanders, can not be made on appeal for the first time.

2. Appellant can not avail himself of an objection to the indictment
made by his co-defendant.

3. An application for a change of venue can not be considered where
there has been no notice to the Commonwealth's attorney, and
no waiver of notice by him; the mere fact that he is present
when the application is made not being sufficient to dispense
with notice.

4. Though counsel had been employed only nine days before the
trial, the refusal of the court to grant a continuance was not
error.

5. It was not error to refuse to permit physicians to testify as ex-
perts on insanity, where it was not shown that they had ever
treated an insane person.

6. Expert testimony, based solely upon supposed previous habits
which might tend to produce insanity, is not admissible in

Bishop v. Commonwealth.

the absence of independent testimony to show that defendant was in fact insane at the time of the killing.

7. Where neither the circumstances of the killing nor any other evidence tended to show insanity, it was not error to refuse an instruction on that subject.

8. It was not improper for the prosecutor in a case of murder to refer to the defendant, in his argument to the jury, as a murderer and an assassin.

9. Where defendant killed a peace officer who had him under arrest, he can not complain that the court treated the homicide as if it had been committed upon a private citizen.

10. It was not merely competent to show that a man had been killed, and that defendant was accused of killing him, in order to justify the arrest of defendant by deceased as a peace officer, but it was also competent to show that defendant actually killed the man, and was fleeing from the scene of the homicide at the time of his arrest, in order to establish the motive of desire of escape.

11. Upon a trial for murder, evidence showing that accused was drunk at the time he did the killing, being admissible to show want of malice, is sufficient to entitle accused to an instruction as to voluntary manslaughter.

RARDIN & RARDIN, H. D. GREGORY, AND JOHN B. O'NEAL, ATTORNEYS FOR APPELLANT.

ROBT. J. BRECKINRIDGE, FOR THE COMMONWEALTH.

(No briefs in the record.)

OPINION OF THE COURT BY JUDGE DuRELLE—REVERSING.

Appellant, Bishop, with one Thomas Lyons, was indicted for the murder of William McQuery on the 8th day of June, 1900. Appellant, it seems, had gone from Cincinnati to a place called the "Hobo Camp," near the "Lagoon," at Ludlow, on the 5th day of June, and he claims to have gotten into a difficulty with some tramps who were camping there, and to have been driven away. On the afternoon of the 8th he returned to Ludlow from Cincinnati with Lyons, as he says, for the purpose of taking a train for Louisville. On that day it appears that an unknown man was killed at the "hobo" camp, and the evidence tended to show that both appellant and Lyons were engaged

in the killing. Such evidence as was introduced shows this homicide to have been committed under circumstances of peculiar atrocity; that the unknown was lying asleep, with his hat over his face; that one of the two men indicted lifted the hat from the face of the sleeper, replaced it, shot him, and thereupon the other fired three shots into the victim. Thereupon the two proceeded, according to Bishop's evidence, to a saloon, where they got a drink, and hailed a street car for Cincinnati. The conductor refused to stop, as it was midway of a square; but the two men boarded it while in motion, and took seats. About 5 o'clock the car reached the Covington end of the suspension bridge connecting Covington with Cincinnati. In the meantime information had been telephoned to the Covington police headquarters that a man had been killed near the "Lagoon," and that the two men who killed him would probably attempt to cross to Cincinnati by the suspension bridge. A description of them was given by telephone. Accordingly, McQuery, who was a police officer, was informed of the substance of the telephone message, and directed to go to the bridge, and, if possible, arrest the men. He stopped the car at the south end of the bridge, and had a conversation with the men. The testimony does not show all of that conversation, as most of it was in an undertone, and not heard by the other passengers. It does show that McQuery desired the two men to go with him to the chief's office, or uptown, and that, after some conference among themselves, they agreed to go with him and see what he wanted. McQuery went out first. At the rear door of the car he turned, and Bishop, who had drawn his pistol as he rose from his seat, fired, the shot taking effect in the abdomen. The officer was in full uniform of a policeman—helmet, shield, baton, blue

clothes, and brass buttons.    McQuery,, after being shot, seems to have drawn his revolver, and fired it two or three times during a struggle with appellant and Lyons, in which they succeeded in wresting it from him.    They then started across the bridge, but seem to have been passed by the street car on which the difficulty occurred.    As the car passed, they covered it with their revolvers, but made no effort to stop it.    Fearing, possibly, that he would be stopped at the north end of the bridge, appellant leaped from the bridge into the river below, a distance of some 90 feet, and swam to the Kentucky shore, where he was arrested, with a revolver in his hand.

On appeal from the judgment of conviction it is urged that it was error to summon a special grand jury from bystanders, the entire grand jury having been discharged on account of smallpox in the family of one of the jurors. Kentucky Statutes, section 2247.    Lyons filed a motion to set aside the indictment upon this ground, but the record does not show that appellant made any motion or took any action objecting to this procedure.    It is now too late to do so.

Appellant filed a petition for a change of venue, sup-ported by the affidavits of two persons, one of whom ap-pears by the record to have been a citizen of Ohio.    Under the cases of Higgins v. Commonwealth, 94 Ky., 54; (21 S. W., 231), and Draughan v. Same (Ky.), (45 S. W., 367), con-struing what is now section 1110, Kentucky Statutes, a *prima facie* case was made out by the petition and affidavits. It is earnestly and very plausibly argued by appellant that the fact that one of the witnesses was a citizen of another State should not be held to prevent the use of his affidavit in support of such a petition.    The marked differ-

ence between the statute applicable to changes of venue in civil cases (section 1096) from that with reference to criminal cases (section 1110) lends strong support to this contention, for the former section requires that the petition shall be "supported by the affidavits of at least two credible housekeepers of the county in which the action is pending," while the section as to criminal cases requires only the production and filing of "the affidavits of at least two other credible persons, not of kin nor of counsel for the defendant;" from which it may be argued that the lawmakers had in mind a case in which public feeling against a defendant might be so high as to prevent residents of the county being willing to make such affidavits. But it is not necessary to decide that question. No notice of the application, in writing or otherwise, was given the attorney for the Commonwealth or the county attorney. It is urged that the attorney for the Commonwealth was present when the application was filed, and might have applied for time in which to produce evidence upon the question whether appellant could obtain a fair trial in Kenton county. We do not undertake to determine whether an objection on behalf of the Commonwealth not specifically limited to the ground of want of notice would be construed as an entry of appearance by the Commonwealth to the application for change of venue, but in this case nothing appears to show that the Commonwealth waived its right to notice. Without notice, or a waiver of it, the Commonwealth was not required to pay any attention to the application; and while the affidavits would, if properly presented to the court, make a *prima facie* case for change of venue—and the court's order of removal of appellant under guard to Louisville for safety strongly corroborates the claim of the application—it was not pre-

Bishop v. Commonwealth.

sented in such form as to be available. The refusal to grant a continuance, urged as ground for reversal, does not seem to us sufficient. The affidavit filed states in general terms the existence of witnesses in various parts of the country, but does not indicate what could be proved by them; and we can not say that the fact that counsel had been employed only nine days before trial rendered the refusal of the court to grant a continuance an abuse of judicial discretion in that behalf.

Nor can we perceive any error in the rulings of the court as to the evidence of the two doctors introduced by the defense. The court excluded entirely the evidence of one of the physicians, and refused to permit the other to answer a question in regard to a hypothetical case. Neither doctor qualified as an expert upon the subject of insanity. Each was asked if he had any experience in the treatment of persons suffering from excessive smoking of cigarettes or drinking of whisky, and responded in the affirmative. For all that appears in this record, neither of them had ever seen an insane person  Moreover, had the medical witnesses been qualified as experts upon the subject, we think the same rule should be applied to expert testimony based solely upon a supposed case of previous habits which might tend to produce mental unsoundness as is applied to the introduction of testimony showing an ancestral taint as a fact tending to produce the same result, viz. that it can not be introduced in the absence of other independent testimony to show that the defendant was himself insane at the time of the killing. Murphy v. Commonwealth, 92 Ky., 485; (18 S. W., 163). Nor is there anything in the circumstances of the killing itself to indicate insanity, so as to lay a foundation for the introduction of testimony as to hereditary taint, or as to the effect which

previous habits of the appellant might have in producing mental aberration. A sufficient motive for the killing—i. e. the desire of escape—was shown to exist. There was no evidence of insanity at the time of the killing; not even in the testimony of appellant himself, who testifies as to his previous habits of drinking and cigarette smoking, and says: "I was very much excited. My leg pained me so. In fact, my mind was dazed from drink. I don't thoroughly well recollect what it was. I know there was an officer came in and a gun pulled. I was frightened. I really could not tell just what did happen." This is not evidence of insanity, and we think, therefore, it was not error for the court to refuse an instruction upon insanity.

In arguing the case to the jury the Commonwealth's attorney referred to the appellant as a murderer and an assassin. Whether he was a murderer and an assassin was the very question which was on trial, and we do not consider it improper for the district attorney, in the course of his argument, to make a statement to the jury which amounted to nothing more or less than an expression of his opinion that defendant was guilty. Attorneys for the Commonwealth do sometimes, in argument, travel outside of the record, and make unjustifiable and inflammatory appeals to the passions of juries. In proper cases this court has not been slow in condemnation of such practices. But it does not seem improper for the prosecutor in a case of murder to state in argument to the jury that the defendant is guilty of murder. It may be, as suggested by the defense, that instructions properly have been given as to the right of McQuery as a peace officer to make the arrest, and as to the degree of guilt which the law attaches to his slayer, upon the lines of the instructions on this subject given in Fleetwood v. Commonwealth, 80

Ky., 1.   The court, however, treated the homicide as a case of homicide by one citizen upon the person of another. Of this the defense can not complain, as it was distinctly to its advantage.   Appellant himself does not testify to any act upon the part of McQuery which would offer reasonable or any grounds for the self-defense theory.   We are of opinion that the instructions were not prejudicial to appellant, so far as this objection is concerned.

This brings us to the consideration of an objection to the proceedings which is very earnestly and plausibly urged. Undoubtedly, the information sent over the telephone and communicated to McQuery authorized him to make the arrest.   Nothing more was necessary to be shown for that purpose.   But the court permitted testimony to be introduced as to the killing of the unknown at the "hobo" camp, and this, it is urged, grievously prejudiced appellant by putting him, in effect, upon trial, not only for the homicide charged in the indictment, but for the other homicide, which occurred an hour previous.   The cases of Martin v. Commonwealth, 93 Ky., 189, (19 S. W., 580); Green v. Commonwealth (Ky.), (33 S. W., 100), and Shelby v. Commonwealth, 91 Ky., 564, (16 S. W., 461), are relied on.   It is claimed that, inasmuch as the telephone message was sufficient to justify the arrest, all additional testimony with regard to the transactions near the "Lagoon" was entirely incompetent and irrelevant.   After a careful consideration of this question, we have reached a different conclusion. It was competent to establish any fact which tended to show motive on the part of the accused, and to make plain to the jury the relations which existed between the accused and the officer at the time the homicide was committed.   It was not merely competent to show that a man had been killed, and that appellant was accused of killing him, in

order to justify the officer's arrest; but it was equally competent to show that appellant actually killed the man, and was fleeing from the scene of the homicide at the time of his arrest by the officer, in order to establish the motive of desire of escape, upon the existence of which motive the jury evidently based their verdict. In establishing the fact of the killing it was impossible to avoid proving some of the details. We are unable to see how this could have been avoided, and we can not see that any details unnecessary in making proof of the killing at the "Lagoon" were permitted by the court to be lugged into the trial of the second homicide. Of course, it was essential that the jury be told that the killing at the "Lagoon" was not evidence to establish guilt under the indictment upon which appellant was being tried, but was only evidence to show why appellant was on the car, and to establish motive for the homicide. This the trial judge repeatedly, and with exemplary care, explained to the jury, and again reiterated in a special instruction given with the instructions upon the law of the case. It is, perhaps, unfortunate for the appellant that the first homicide was so interwoven with the second as to furnish a motive for it, but, as it did tend to show motive, it was for that purpose, and that purpose only, competent, and the jury were expressly instructed that it was for that purpose, and that purpose only, admissible. We do not think there is anything in any of the cases referred to in conflict with this doctrine. In the case of Shelby v. Commonwealth, 91 Ky., 571, (16 S. W., 461), it was held that incompetent testimony might still be prejudicial in spite of a direction to the jury to disregard it. In the Martin case, 93 Ky., 193, (19 S. W., 580)—the case especially relied upon—evidence was permitted to be introduced in order to show motive, not only of the fact

that the accused had been indicted for robbery upon the
testimony of the deceased, but also evidence which went
to show him guilty of the robbery. In the case at bar
a mere showing of the fact that the officer had informa-
tion that appellant had committed a murder would not
necessarily shed any light upon appellant's motive in
taking the officer's life, for, while it might afford reason-
able ground for the officer to believe a felony had been
committed, it might also be entirely untrue, and there-
fore show nothing as to appellant's motive. In the case
of Green v. Commonwealth (Ky.), (33 S. W., 100), it was
held that evidence of two killings by the defendant was
properly admitted, they having taken place nearly simul-
taneously, but that it was error to introduce testimony of
threats made by the accused to commit the murder for
which he was not then on trial.

With great earnestness it is urged that the instruction
as to voluntary manslaughter asked for by the defense
should have been given, and that its refusal was prejudi-
cial error, for the reason that there was evidence showing
that for a number of months the accused had been in the
constant habit of drinking to excess, that he had been upon
a protracted spree for several days prior to the homicide,
and that upon the day of the homicide he had drunk 11
milk punches, besides a number of drinks of whisky, cock-
tails, etc., and that he learned the fact that McQuery was
an officer after the homicide was committed. In exam-
ining the authorities upon this question, it will not be
necessary to consider any Kentucky case prior to 8 Bush,
for the reason that in Shannahan v. Commonwealth, 8
Bush, 470, there were overruled the cases of Smith v. Com-
monwealth, 1 Duv., 224, and Blimm v. Commonwealth, 7
Bush, 320, in so far as those cases authorized or required

the giving of a specific instruction upon the effect which testimony of drunkenness might have in mitigation of the offense charged. In that case it was said, in the opinion by Judge Pryor: "We are not to be understood, however, as determining that the fact of drunkenness in a case like this is incompetent testimony before a jury upon the question of malice. Malice, express or implied, must be proven in order to constitute the crime of murder, and, in the absence of this proof, no conviction can be had for such an offense; and evidence as to the condition of the accused at the time of the killing, whether drunk or sober, should be permitted to go to the jury, in connection with other facts, in determining the question of malice. What we do adjudge is that in the trial of a case like this the fact of drunkenness, while it may be a circumstance showing the absence of malice, should not be singled out from the other proof, and the jury told that it mitigates the offense. The proper rule is that one in a state of voluntary intoxication is subject to the same rule of conduct, and to the same rules and principles of law, that a sober man is; and that, where a provocation is offered, and the one offering it is killed, if it mitigates the offense of the man drunk, it should also mitigate the offense of the man sober." In Nichols v. Commonwealth, 11 Bush, 585, in an opinion by Judge Cofer, the Shannahan case, repudiating the doctrine of Blimm v. Commonwealth, was followed and approved. Said the court: "Evidence tending to prove that the prisoner was drunk was allowed to go to the jury, and then they were told in instruction number five given by the court that they had a right to take into consideration the facts and circumstances proven in the case in determining the existence or nonexistence of malice. This left the jury to consider the fact of drunkenness in

connection with all the other evidence in the cause in deciding whether the killing was malicious, and gave the prisoner all the benefit he was entitled to from the evidence touching his intoxication." In Buckhannon v. Commonwealth, 86 Ky., 112; (5 S. W., 358), this court, speaking through Judge Holt, said: "It is evident, if his mind was affected, that it was the result of his temporary intoxication. There is not even a pretext that he was insane. It clearly appears that he was not, but that his condition arose from his then voluntary drunkenness. Not only was the testimony, therefore, inadmissible, but the accused was not entitled to an instruction as to insanity, and none should have been given. Nor would it have been proper to have singled out from the evidence the one fact of drunkenness, and told the jury why and for what purpose they were allowed to hear evidence as to it. Such testimony is competent, not because intoxication *per se* either excuses or mitigates crime, but because, in connection with other facts, an absence of malice may appear. A deliberate intent to take life is an essential element of murder. Drunkenness as a fact may, therefore, be proven as bearing upon its existence or nonexistence. It is not admissible upon the ground that it in and of itself excuses or mitigates the crime, because one offense can not justify or palliate another, but because, under the circumstances of the case, it may tend to show that the less, and not the greater, offense was committed." In Wilkerson v. Commonwealth, 88 Ky., 33; (9 S. W., 836), it was said in an opinion by Judge Holt affirming a death sentence for murder: "It was competent to prove his condition, not because intoxication *per se* excuses crime, but because it, with other circumstances, may show an absence of malice. It is admissible in evidence merely as one fact bearing

upon the existence or nonexistence of that deliberate intent essential to the crime of murder." So, in Madison v. Commonwealth (Ky.), (17 S. W., 164), in an opinion by Judge Lewis, it was said: "The true rule is, to leave to the jury the right to consider the fact of drunkenness in connection with all other evidence in the case in deciding whether the killing was malicious or not." In Keeton v. Commonwealth, 92 Ky., 523, (18 S. W., 359), Judge Pryor, reversing a judgment of conviction for robbery in which evidence had been excluded which went to show that the accused was so far under the influence of liquor as not to know what he was doing or had done, used this language: "The testimony offered should have gone to the jury, so that they might determine the intent of the accused when he made the assault. It has been held by this court in more than one case that drunkenness is no excuse for crime, and constitutes no defense, even in a case of homicide, where the accused was unconscious of the nature of the act, if that condition of the mind was the result of voluntary intoxication with a knowledge of the effect of liquor on the passions. Still it has been adjudged in those same cases that the physical and mental condition of the accused at the time of the homicide is competent to show an absence of malice, and thus reduce the crime from that of murder to manslaughter. Malice being one of the essential ingredients of murder, if the accused was so unconscious as evidenced his want of capacity to entertain malice, then his offense is manslaughter. Shannahan v. Commonwealth, 8 Bush, 463; Buchannon v. Commonwealth, 86 Ky., 110; (5 S. W., 358). If, therefore, the degree of guilt in cases of homicide is to be determined by the capacity of the accused to premeditate the crime—that is, to kill with malice—it must follow, and such is the well-

recognized doctrine on the subject, that in cases where the
intent or purpose of the party is a necessary element to
constitute the crime it is competent to show that the physi-
cal and mental condition of the accused was such as shows
him unable to entertain or form a felonious intent." In
Rogers v. Commonwealth, 96 Ky., 28; (27 S. W., 813), the
law upon this question was admirably stated in an opinion
by Judge Hazelrigg as follows: "In the second place, we
are convinced that the accused was entitled to have the
jury instructed on the law of voluntary manslaughter.
Whether or not malice—the very essence of murder—ex-
isted, was a fact to be determined by the jury, and all the
attending circumstances of the homicide, including the
mental condition of the accused, whether drunk or sober,
whether feeble-minded or otherwise, whether provoked
and incited into sudden passion at the moment of the as-
sault with the stick, the character of the weapon used,
all were matters legally put in proof for the considera-
tion of the jury for the very purpose of guiding them to
a correct conclusion on the degree of the appellant's guilt."
From these authorities it seems to us inevitably to follow
that an instruction upon the law of voluntary man-
slaughter should have been given, under which the jury
might consider the fact of appellant's drunkenness in con-
nection with all the other circumstances surrounding the
homicide as tending to show the absence of malice, and
therefore to reduce the crime in degree. It makes no dif-
ference whether or not we are satisfied of appellant's
guilt, or think that the jury would not have been justified
in giving such weight to that testimony. In order to test
the sufficiency of the instructions, we must assume that
the jury would have believed the evidence introduced for
the defense. If they did believe defendant's story—which

was, moreover, corroborated by other testimony—they could, under the instructions, give it no effect, for they were limited to a choice between not guilty and guilty of murder. They were entitled to consider the fact of his drunkenness, if they believed it deprived him of the power of knowing what he was about, as a fact showing want of malice; and he was entitled to have the opportunity given to the jury to so consider it. As said by Judge Hines in Bush v. Commonwealth, 78 Ky., 269: "Under an indictment for murder or manslaughter, when there is evidence from which the jury might find the existence of facts constituting involuntary manslaughter, it becomes the duty of the court to instruct the jury as to the law of this offense. Buckner v. Commonwealth, 14 Bush, 603; Brown v. Commonwealth, 14 Bush, 398." And in Bowlin v. Commonwealth, 94 Ky., 395; (22 S. W., 543), it was said by Judge Lewis: "In fact, it is not the province of the lower court, any more than of this, to weigh evidence for the purpose of determining whether a person on trial for his life is entitled to an instruction as to manslaughter. But, if there is any evidence tending to show the homicide is of the degree of manslaughter, the accused is entitled to an instruction upon that hypothesis." Undoubtedly, there was evidence in this case tending to support the hypothesis of manslaughter, and under the authorities appellant was entitled to have the jury instructed upon that question. For this reason, the judgment must be reversed, and cause remanded, with directions to award appellant a new trial, and for further proceedings consistent herewith.