## Rogers v. Rogers' Administrator.

(Decided October 28, 1921.)

### Appeal from Nicholas Circuit Court.

1. Payment—Settlement—Receipt.—A receipt in full will be regarded as in full of unsettled demands up to its date, in the absence of some explanation; but it is only presumptive evidence and the jury may determine from the whole evidence whether the settlement actually embraced the items sued on.

2. Gifts—Gift of Note—Instructions.—On the issue whether a deceased mother had given to and delivered to her son a certain note, it was error for the court to peremptorily instruct the jury to find against the son as to a part of the proceeds of that note which had been applied to the payment of his debt after the alleged gift.

HOLMES & ROSS and J. C. DEDMAN for appellant.

CONLEY & McCARTNEY, ROBERT BUCKLER and JNO. P. McCARTNEY for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER—
Reversing.

In March, 1918, Mrs. Josephine Rogers died intestate, a resident of Nicholas county, and the appellee, S. P. Rogers, shortly thereafter qualified as administrator of her estate.

Among her papers were found five past due notes executed by appellant, James P. Rogers; some of these notes were payable directly to the decedent and some of them appear to have been assigned to her because paid by her as the surety of her son, James P. Rogers.

This is an action by the administrator against James P. Rogers on each of those notes, and, in addition, there is asserted in a separate paragraph a claim against the defendant for $1,045.36, alleged to have been paid out of the funds of the decedent for James P. Rogers in settlement of a note of his to a Carlisle bank on the 2nd day of March, 1918, a short time before the death of Mrs. Rogers.

Each of the notes sued on was long past due prior to the 28th of January, 1918, and the answer alleges as to these notes that prior to that time defendant and the decedent had many business transactions with each other, and on that date they had a full and complete settlement of all business transactions had between them up to and including that date and that in such settlement it was found and determined that defendant was indebted to the said Josephine Rogers in the sum of eighty-three dollars, for which sum defendant at the time gave her his check and she accepted the same and collected thereon the eighty-three dollars in full settlement of the balance found to be due her.

The reply controverted this allegation and on the trial it was shown by the evidence of two witnesses that on or about the 28th or 29th of January, 1918, defendant had given to his mother a check for eighty-three dollars on a Millersburg bank, and that there was written on the face of that check the words: "In full settlement to date." One of the witnesses so testifying was a brother of the decedent, at whose home she was staying at that time, and he testified in substance that about that time his sister, Mrs. Rogers, gave to him two checks to be deposited in her bank at Carlisle and that one of those checks was the check of appellant, payable to her for eighty-three dollars, and had on its face in substance, "In full settlement to date."

The evidence of the cashier of the Millersburg bank shows that the check was paid on the 31st day of January, 1918, and came to his bank through the Carlisle bank. The evidence of the defendant shows that he has made a diligent search for that check and has been unable to find it and this fact is shown in addition by the cashier of the Millersburg bank.

In addition to this evidence about what appeared on the face of that check, there is the evidence of one of Mrs. Rogers' daughters, a sister of both appellant and appellee, that she had a conversation with her mother about Christmas time, 1917, which was only a few weeks before this check was given, wherein her mother said to her in substance that some of the children were complaining and thought that Jimmy was getting everything that she had but they were much mistaken, that Jimmy owed her only about one hundred dollars, a little more or a little less.

Her brother further testified that after he had deposited the two checks for Mrs. Rogers, and when he handed back her passbook to her, she said if everybody was like Jimmy she would have no trouble, that he always paid her everything he got from her and did not owe her anything but what he paid her.

The court, in its first instruction, peremptorily instructed the jury to find for the plaintiff on four of these notes, one of the five notes having been found to be embraced in a renewal of one of the other notes, and about which there is now no question.

There was no specific evidence showing that any one of these notes was considered in the alleged settlement or was an item taken into the estimate therein to determine the final amount reached; but this positive evidence that the check bore on its face the statement that it was a settlement "in full to date," taken in connection with the evidence of her brother that she said at the time that James P. Rogers never owed her anything that he did not pay her, and in connection with the evidence of her daughter that she said a few weeks before that James P. Rogers owed her only about a hundred dollars, maybe more and maybe less, it seems to us was such evidence of a settlement as would have authorized the jury to find that these notes were considered in that settlement and had been settled therein.

A receipt in full will be regarded as in full of all unsettled demands up to its date, in the absence of some explanation; but it is only presumptive evidence, and the

jury is authorized to determine from the whole evidence whether or not that settlement actually embraced the items sued on. Newton's Executor v. Field, 98 Ky. 192; First National Bank v. Behan, 91 Ky. 563.

The evidence which we have recited, therefore, authorized a submission to the jury of the issue whether there had in fact been a full and complete settlement between appellant and his mother on the 28th day of January, 1918, and whether the notes in question had been considered and embraced in such settlement.

The court further, in its first instruction, peremptorily directed the jury to find for the plaintiff the sum of $1,045.36, alleged to have been paid by the decedent for the appellant on the 2nd of March, 1918.

As to this last item the defense of appellant is that his mother, in November, 1916, was the owner of a purchase money note executed to her by one Asbury for $3,322.00, which note was due on the 2nd day of March, 1918; that in November, 1916, the decedent, being in possession and the owner of such note, gave the same to appellant and delivered the same into his possession and endorsed her name on the back thereof, whereby he became the owner thereof. That thereafter and in January, 1917, he, appellant, while the owner of such note, borrowed from a Carlisle bank one thousand dollars and placed said purchase money note of Asbury in the bank as collateral to secure the payment of his said one thousand dollar note; and that thereafter, on the 2nd day of March, 1918, during the lifetime of his mother, the purchase money note fell due and Asbury, on that date, paid the same into the said Carlisle bank, amounting at the time to $3,521.32, and that out of the proceeds of the same the bank retained the sum of $1,045.36, the amount due it on defendant's one thousand dollar note, and thereafter wrongfully paid the balance thereof ($2,475.96) to S. P. Rogers, administrator of Josephine Rogers, and he makes his answer a counterclaim against the administrator and asks judgment thereon for the last named amount.

As stated, the court, in its first instruction, peremptorily directed the jury to find a verdict against the defendant for the $1,045.36, paid out of the proceeds of the Asbury note to the bank, thereby deciding as a matter of law under the evidence that the Asbury lien note and its proceeds were the property of the decedent's estate. But, notwithstanding this action as to a part of the proceeds of that note, the court, in its second instruction, directed the

jury if they believed from the evidence that the decedent had given to the defendant the Asbury note for $3,322.00, and delivered the same to him, they would adjudge him a credit on all these transactions for $2,475.96, the balance of the Asbury note, as of the 2nd day of March, 1918.

The jury, in its verdict, allowed appellant a credit for $2,475.96, the balance of the proceeds of the Asbury note, and thereby necessarily found that his mother had given that note to him; and yet the jury, under the direction of the court in the first instruction, found for the plaintiff a verdict for $1,045.36, a part of the proceeds of the Asbury note, which had been used to discharge appellant's obligation. It is clear, therefore, that if, as the jury found, the decedent had made a valid gift of the Asbury note to appellant prior to March 2, 1918, and at that date it was, therefore, the property of appellant, the judgment against appellant for $1,045,36, which was part of the proceeds of that note, was erroneous. If his mother had given him the note and it was his property, there should have been no judgment against him for any part of the proceeds of the note, and he should have been given a judgment on his counterclaim against the appellee for the balance.

On a return of the case the court, in its instruction, will direct the jury to find for the plaintiff on the four notes in question, unless they should believe from the whole evidence there was, in January, 1918, a full and complete settlement between the decedent and appellant, in which settlement the notes in question or some of them were embraced and considered, in which event they will find for defendant as to such of them as they may believe were considered and embraced in that settlement, if any.

As to the Asbury note, the jury should be instructed that if prior to March 2, 1918, the decedent gave and delivered to appellant the same as a gift, they will find for the defendant as to the $1,045.36 item, and will also find for the defendant on his counterclaim a judgment or credit for the $2,475.96.

The judgment is reversed with directions to grant appellant a new trial and for further proceedings consistent herewith.