'CASE 73—PROSECUTION AGAINST CLAUDE O'BRIEN FOR MURDER.—
MAY 20.

# O'Brien v. Commonwealth.

APPEAL FROM FAYETTE CIRCUIT COURT.

DEFENDANT (CONVICTED AND PENALTY FIXED AT DEATH, AND HE AP-
PEALS. AFFIRMED.

CRIMINAL LAW—HOMICIDE—EVIDENCE OF BURGLARIES—ADMISSIBIL-
ITY TO SHOW MOTIVE—IDENTIFICATION OF ACCUSED—INTOXICA-
TION OF COUNSEL—REFUSAL OF NEW TRIAL.

Held: 1. In a prosecution of burglars for murder, evidence of
other burglaries by them, in which thefts were committed, oc-
curring immediately before the one in question, is admissible
to show motive; the court instructing that it could not be con-
sidered for any other purpose.

2. In a prosecution of burglars for murder by a pistol shot, where
the confession of one had disclosed pistols concealed by them
after the crime, evidence of other burglaries by them, occur-
ring immediately before the one in question, and in which
the pistols so found were stolen, is admissible to identify the
guilty parties; Cr. Code, section 241, requiring the corrobora-
tion of an accomplice by evidence tending to connect the ac-
cused with the commission of the offense.

3. Const. (Bill of Rights), section 11, provides that in criminal
proceedings the accused has the right to be heard by himself
and counsel. In a prosecution for murder, it was claimed that
defendant's counsel, was so intoxicated during the trial as to
interfere, in part, with his duties; that, when argument was
reached, it had to be deferred until the next day on this ac-
count; and that after addressing the jury he immediately left
the city, whereupon the court appointed other counsel. Coun-
sel had been selected by accused's mother, and no complaint
was made of his legal learning or experience, and the record
showed that his examination of witnesses was efficient. HELD,
that the refusal of a new trial would not be disturbed.

4. The alleged misconduct of the appellant's counsel having been
brought to the court's attention for the first time by affidavits
filed on the motion for a new trial, and no exceptions taken
to it during the trial shown by the record, under section 281,

Criminal Code, it is provided that errors presented for the first time in a motion for a new trial are not subject to exception, and can not be considered by this court.

W. C. G. HOBBS AND J. N. ELLIOTT, ATTORNEYS FOR APPELLANT.

On the night of October 11, 1902, the dwelling house of Mr. A. B. Chinn, in the city of Lexington, Kentucky, was unlawfully entered by one Earl Whitney and the appellant, Claude O'Brien, and Mr. Chinn was killed. Whitney and O'Brien were arrested in a few hours after the commission of the offense and lodged in jail. Whitney confessed to his being connected with the crime, in a day or so after his arrest, and they were sent to Louisville to escape mob violence. A special grand jury was impaneled which returned an indictment upon which O'Brien and Whitney were tried and convicted, and their penalty fixed at death. Counsel who had defended O'Brien on the trial, having been in a state of intoxication during the trial, had left the city before the verdict was returned, and after the return of the verdict the present counsel, W. C. G. Hobbs and J. N. Elliott were, upon the request of appellant's brother to the court, appointed by the court to further attend to the interests of appellant's case. Not having been in any way connected with the trial of the case, and we are at a great disadvantage in prosecuting this appeal, and are further hindered by the fact that objections were not made and exceptions saved as they should have been on the trial.

Claude O'Brien is a lad of about fifteen years. His father died when he was four or five years of age, leaving him and his two brothers, one a few years older and the other a few years younger than himself, dependent upon their widowed invalid mother for support. He had to work as soon as he was able, to help support his mother and younger brother. His associates were not of his own choosing. He came to Lexington through the influence of Earl Whitney, who told him they could get work here at good wages. They were here without money and without friends, and no doubt found it necessary to do something in order to live. We don't believe they intended murder, in firing the shots that killed A. B. Chinn.

We present two grounds for a reversal:

1. The admission of incompetent evidence.

2. The misconduct of appellant's counsel. As to the first ground: The court allowed the Commonwealth to introduce evidence that the houses of Mr. Slade and Mr. Alford had been burglarized the same night that A. B. Chinn's house was entered, and he was killed. Earl Whitney especially testi-

fied with great particularity as to the happening at the Slade and Alford houses. We hold that this was error, and although the record does not show that all this evidence was excepted to by counsel for appellant, we think that on account of the intoxicated condition of the counsel the court should consider these errors, as by them the substantial rights of the appellant were prejudiced, especially where one was on trial for his life.

3. As to the intoxication of appellant's counsel: The affidavits filed show that he was, during the trial, so intoxicated as to unfit him from discharging his duties as counsel, and as the law provides in such cases that the defendant shall be heard by himself and counsel, we submit that it can not be said that appellant has had a fair and impartial trial when represented by counsel in such a condition; and we contend that it is the duty of the court to see that no one, especially a minor of tender age, shall be subjected to the death penalty without being represented by counsel capable of so presenting his case to the court and jury as to give him a fair and impartial trial.

We also submit that the fact that the conduct of appellant's counsel is not shown by the record to have been excepted to during the trial, and is only excepted to on the grounds for a new trial, ought not to prevent this court now, from considering this error. The trial court saw and knew of his intoxicated condition and on one occasion adjourned the court in order to give him time to sober up, and yet permitted the trial to go on; and while the record does not affirmatively show these facts, it is because appellant's counsel was so drunk as not to make the record show such fact.

Feeling that the substantial rights of the appellant have been prejudiced by the errors complained of, especially as to the conduct of his counsel, we respectfully ask a reversal.

### AUTHORITIES CITED.

Martin v. Com., 93 Ky., 192; Bishop v. Com., 22 R., 1165; Green v. Com., 17 R., 943; McClure v. Com., 81 Ky., 452; Constitution United States, 6th Amendment; Constitution of Ky., sec. 12; Bill of Rights; Sharp v. Mayor, 31 Barb., 573; State v. Jones, 12 Mo. App., 93; Meece v. Com., 78 Ky., 539; Rutherford v. Com., 78 Ky., 641; sec. 340, Crim. Code, secs. 11, 26, 110, Ky. Constitution.

CLIFTON J. PRATT, ATTORNEY GENERAL, AND M. R. TODD, FOR APPELLEE.

A careful reading of this record discloses a brutal and heinous crime committed by two self confessed criminals, whose

O'Brien v. Commonwealth.

lives have been one of continuous crime. No extenuating cir-
cumstances appear in the record to warrant other than the
death sentence.   The evidence was not subject to doubt, the
guilt clearly established.

1. Objection is made to the testimony of O. L. Slade and M.
C. Alford, who testified to the burglaries in their houses on
the same night of the murder of Mr. Chinn.

We contend that this evidence was competent to show the in-
tent of the parties in entering the home of Mr. Chinn.  It was
merely corroborative of the testimony of Whitney, and the
court in the instructions properly admonished the jury as to
the effect they must give to this evidence.

2. As to misconduct of counsel for appellant:  It does not ap-
pear from the affidavits filed that counsel was unfitted
during the taking of the testimony to conduct a proper de-
fense, but was in such condition at the time the case was
ready for argument, and that the trial court continued the
case for twenty-four hours to enable counsel to get in proper
condition to present his argument to the jury.  It is not shown
that he was in a drunken condition when he made his argu-
ment.   The record shows that the cross-examination of the
witnesses for the Commonwealth and the taking of the tes-
timony for the defense was performed in an able manner, and
does not indicate negligence or incompetency.  The court had
no power to appoint other counsel when an attorney had been
employed to defend the accused, and there was no request at
any time made to the court to appoint other counsel, and no
objection made to the conduct of the attorney employed.

The record shows that the trial court guarded the rights of
the appellant with jealous care.  There were many objections
made to the admission of testimony, and in every instance
the objections of counsel for appellant were sustained, with the
exception to the testimony of Slade and Alford.

The appellant can not be heard to complain of an alleged er-
ror which was not taken advantage of during the trial, or
which was first called to the attention of the court upon a
motion for a new trial.  Section 281, Criminal Code, provides
that the "decision of the court upon a motion for a new trial
shall not be subject to exception."

### AUTHORITIES CITED.

Bishop N. C. P., vols. 1, 1125, 1126, A. & E. Ency. Law, vol.
4, p. 850; Lamb v. State (Md.), 5 Cent. R., 775; A. & E. Ency.
Law, vol. 11, p. 376; Tye v. Com., 3 R., 59; Thomas v. Com.,
1 R., 122; Rice on Ev. (Crim.), vol. 3, sec. 470; Mason v.

State, 42 Ala., 532; Greenleaf on Ev., vol. 1, sec. 53, vol. 3, sec. 15; Bishop v. Com., 22 R., 1165; Martin v. Com., 93 Ky., 192; Kennedy v. Com., 14 Bush, 340; Brown v. Com., 14 Bush 398; Morgan v. Com., 14 Bush, 106; Redmon v. Com., 82 Ky., 322; Crim. Code, secs. 281, 282, 340.

OPINION OF THE COURT BY JUDGE SETTLE—AFFIRMING.

The appellant, Claude O'Brien, and one Earl Whitney were jointly indicted in the Fayette circuit court for the murder of A. B. Chinn, a citizen of Lexington, Ky. A separate trial was accorded the appellant at his request, which resulted in his conviction, and the fixing of his punishment at death, by the verdict of the jury. His motion for a new trial was overruled by the lower court; hence this appeal.

The facts and circumstances leading to and surrounding the commission of the murder, as shown by the record, are few and simple. At 2:30 or 3 o'clock a. m. on October 11, 1902, under cover of darkness, the dwelling house of A. B. Chinn was burglariously entered by the appellant, Claude O'Brien, and his accomplice, Earl Whitney. They proceeded at once to the bedroom of Chinn and wife. The latter was awakened by the creaking of the screen door as they entered the room, and she, in turn, awoke her husband, as the intruders, lighting a match, approached the bed in which they were lying. O'Brien and Whitney wore masks, and both raised their pistols as they neared the husband, who was on the outer side of the bed, and said: "Your money or your life." In reply to the demand for money, both Chinn and wife informed them that they had no money, and never kept any in the house; and the husband then said to them to go and get or find "what you want." At this juncture the son, Asa Chinn, who occupied an adjoining room, appeared at the bedroom door of his parents and called, "Mamma." Upon hearing the voice of the son, either O'Brien or Whitney immediately fired at the elder Chinn,

who was sitting up in the bed, shooting him through the body. The pistol firing then became general between the intruders and young Chinn, who was in the hall near the door, and had dropped upon one knee and commenced shooting at the intruders after the firing of the first shot by one of them in the room. Young Chinn received two wounds himself—one in the right arm, and the other in the neck—and fell on the hall floor. O'Brien and Whitney, the latter of whom was wounded in the leg by young Chinn, then made their escape from the house, running over his prostrate body in the hall, followed by the elder Chinn, who fell in the hall near the bedroom door and immediately died. He, however, informed his wife as he got out of the bed when the firing ceased, that he had been wounded. The foregoing facts were testified to by Mrs. Chinn, and were sustained in part by the son, who heard from his room the words, "Your money or your life," though he did not appear upon the scene until just before the shot which killed his father was fired in the room by either O'Brien or Whitney. It also appears from the record that the statements of Mrs. Chinn and her son are corroborated by O'Brien and Whitney upon all material points, though they contradict each other in many essential particulars. For instance, while both admit that, as they approached the bed of A. B. Chinn and wife, the words, "Your money or your life," were spoken, each testified that they were uttered by the other. They both also admitted that when these words were used the speaker was presenting a pistol at A. B. Chinn, but testified that only one pistol was presented, each claiming that it was presented by the other. Again, both admitted that, when Asa Chinn appeared in the hall at the door of his parents' bedroom, they heard him call to his mother, and that the firing then began, in which one of them shot the

elder Chinn, but each lays upon the other the act of shoot-
ing. There is no claim or pretense from any source that
the elder Chinn was killed by an accidental shot, or that
he was offering any resistance when shot. Upon the con-
trary, the evidence shows beyond all doubt that Asa Chinn
was in a position from which it was impossible for his fa-
ther to have been shot by a stray ball from his pistol; and
the fact that the father's nightshirt was scorched, and his
body powder-burned, proves that the one who shot him was
in the room and close to him. The occurrences following
the murder, and which led to the subsequent detection and
arrest of the criminals, are also few, and unmistakably
corroborative of what had gone before. Immediately after
the murder, the guilty parties went to the depot yard of
the Southern Railroad, and there placed themselves in an
empty freight car, after concealing the pistols with which
they had been armed. They were soon thereafter found
and arrested by the officers who were in search of the mur-
derers of A. B. Chinn. When they were placed under ar-
rest, O'Brien turned to Whitney and said, "Pard, he has
got us." In removing the prisoners from the car, the offi-
cers discovered that their clothing was wet, showing that
they had been in the rain of the previous night. They also
discovered that Whitney was lame, and, in reply to an in-
quiry as to the cause of his lameness, he said he had hurt
his leg upon or against a car, but, when an examination
of his leg disclosed the bullet wound, he then said he had
been shot some days previously by a negro at Williams-
town. It was likewise discovered by the officers that Whit-
ney and O'Brien had exchanged pants before their arrest,
the evident purpose of which was to conceal the former's
wound, for, in wearing his own pants, the presence of the
bullet hole in the leg thereof at the point of the wound,

in connection with his lameness, might have been expected to lead to the discovery of his wound. A few days after the arrest, both O'Brien and Whitney made what purported to be a full confession of their connection with the murder of A. B. Chinn, in which, as already indicated, each tried to place upon the other the leadership in, and blame for, that crime. By the confession of Whitney, the concealment of the pistols with which the shooting at the Chinn home had been done by them was made known, and the pistols were found by the officers at the place designated in the confession. They were three in number. One had been brought by Whitney to Lexington. It was out of repair and practically useless. One of the other two had been taken by O'Brien and Whitney just before the killing of Chinn from the residence of O. L. Slade, and the other from the bedroom of M. C. Alford, in the residence of his sister, Mrs. McConathy. The Slade revolver was a Colt's, of bluish finish, and that of Alford was a silver-mounted double-barreled derringer, with a pearl stock or handle. Each pistol was fully identified by its owner, Slade knowing his by its color and a small amount of rust upon it, and Alford recognizing his by its peculiar finish and pattern. Besides, the Slade pistol was also identified by a clerk in the store where it had been purchased, by its number, which he had entered at the time of its sale to Slade in a book kept for that purpose. Both pistols were loaded when taken from their respective owners.

Though numerous formal grounds for a new trial were presented in the lower court, only two of them are relied on by counsel for appellant for a reversal. That is to say, it is contended that the lower court erred in admitting on the trial evidence of the burglaries committed by O'Brien and Whitney in entering the houses of Slade and McCon-

athy just before the murder of Chinn, and in permitting the trial of appellant to proceed while his then counsel was in an alleged state of intoxication.

As to the first of these contentions, we are of the opinion that evidence of the burglaries was competent, first, as illustrating the motive with which appellant and his accomplice entered the house of A. B. Chinn. They entered the houses of two of his neighbors, committing a theft in each, only a few minutes before entering his. Their mission on that night was theft and robbery, and such, therefore, was their motive and purpose in entering the house of Chinn. Second, the evidence was competent as a means of identifying the guilty parties. The identification was made through the pistols which they had stolen from the houses of Slade and Mrs. McConathy, the latter being a sister of Alford, owner of one of the pistols. The pistols were found through the confession of Whitney, who also told where they had been stolen by himself and appellant, and proof of the burglaries was competent, therefore, to corroborate Whitney's confession, as well as the testimony given by him on the trial of appellant, and to corroborate Slade and Alford in their identification of the pistols, which identification, in turn, fastened the guilt of Chinn's murder upon the parties found in possession of the pistols. The trial court, following section 241 of the Criminal Code, very properly told the jury that they "could not convict appellant upon the testimony of Earl Whitney alone, unless such testimony was corroborated by other evidence tending to connect the appellant with the commission of the offense charged in the indictment; and the corroboration is not sufficient if it merely shows that the offense charged was committed, and the circumstances thereof." In order for the State to make out its case against appellant, corroboration

of Whitney's testimony was necessary, and that corroboration was found in the finding of the pistols in the place of concealment testified to by Whitney, and in the identification of the pistols by Slade and Alford, who told of the burglaries by way of explaining the manner in which they were deprived of the possession of them, and, in doing so, furnished evidence of the motive which actuated the guilty parties in breaking into the house of A. B. Chinn. Bishop's New Criminal Procedure, vol. 1, section 1126, in discussing the admissibility of such evidence as that under consideration, says: "The intent, knowledge or motive under which the defendant did the act charged against him, not generally admitting of other than circumstantial evidence, may often be aided in the proofs by showing another crime, actual or attempted. Then it is permissible." Again, in section 1125, same volume, we find the following statement: "Whole Transaction. As explained under the doctrine of *res gestae*, wherever a part of a transaction appears in evidence the rest is thereby made admissible. So that the entire transaction wherein it is claimed the wrong in issue was done may be shown, though it includes, also, other crimes, and even though each transaction was a continuing one, or transpiring in parts on different days." The same doctrine is recognized in Greenleaf on Evidence, vol. 1, section 53, wherein it is said: "In some cases, however, evidence has been received of facts which happened before or after the principal transaction, and which had no direct or apparent connection with it, and therefore their admission might seem, at first view, to constitute an exception to this rule. But those will be found to have been cases in which the knowledge or intent of the party was a material fact, on which the evidence, apparently collateral and foreign to the main subject, had a direct bearing, and was therefore ad-

mitted. . . . Again, in volume 3, section 15, we find this
further statement from the same learned author: "In the
proof of intention, it is not always necessary that the evi-
dence should apply directly to the particular act with the
commission of which the party is charged, for the unlaw-
ful intent in the particular case may well be inferred from
a similar intent proved to have existed in other transac-
tions done before or after that time." . . . We find that
this court has in more than one case given its sanction to
the rule announced in the foregoing authorities. In Tye
v. Commonwealth, 3 Ky. Law Rep., 59, it is said: "It was
proper to allow the Commonwealth to prove the number
of attempts by the defendant to commit the same offense,
for the purpose of establishing the alleged identity of the
accused. . . ." In Thomas v. Com., 1 Ky. Law Rep.,
122, appellant was on trial for effecting an entrance into a
dwelling with the intention of stealing. Previously a store
had been broken into and goods stolen, and the manner in
which the entrance was effected gave strong evidence that
the appellant was concerned in the prior breaking into the
store. Evidence of the first breaking was admitted to show
the appellant's intention to steal in entering the house.
Held "that, in admitting such evidence of the first break-
ing, the court did not assume that the appellant was guilty
of that crime; but the evidence was such as to warrant the
court in allowing the facts to go to the jury, not as evidence
that the appellant broke into the store, for that was abun-
dantly proved without, but as evidence of his intention, and
such evidence was properly admitted for that pur-
pose. . . ." We are unable to see that the cases of Mar-
tin v. Com., 93 Ky., 192, 14 R., 95, 19 S. W., 580, and Bishop
v. Com., 22 R., 1161, 109 Ky., 558, 60 S. W., 190, sustain the
position assumed by counsel for appellant. Upon the trial

of Martin, for the purpose of showing a motive on his part for taking the life of one Burk, the fact that Burk had procured an indictment against him for robbery was permitted by the trial court to be shown by the production and reading to the jury of the indictment and the entire record, including certain affidavits for a continuance, and by detailed proof from witnesses as to the facts of the robbery, all without any direction or instruction from the court telling the jury for what purpose the evidence might be considered by them. This action of the lower court was held by this court to be erroneous and prejudicial to the appellant, because it, in effect, put him on trial for two offenses at one and the same time; but it was also said by the court that "motive may be shown in certain cases by a state of facts conducing to make out another and distinct offense from that for which the accused is being tried," and, further, that the showing of such motive would have been proper in Martin's case by the introduction of the indictment with the name of Burk on it as a witness, to show that it had been procured by Burk. The case of Bishop bears a striking resemblance to the one at bar. Bishop shot and killed an officer who was trying to arrest him for the murder of another person, whom he had killed but an hour before. On his trial for the murder of the officer, testimony was introduced as to the previous killing. Upon appeal to this court it was urged that its introduction was erroneous and greatly prejudicial to him. But this court, in passing upon the question, said: "It was competent to establish any fact which tended to show motive on the part of the accused, and to make plain to the jury the relations which existed between the accused and the officer at the time the homicide was committed. . . . In establishing the fact of the killing, it was impossible to avoid proving some of the details. . . .

Of course, it was essential that the jury be told that the killing at the 'lagoon' was not evidence to establish guilt under the indictment upon which appellant was being tried, but was only evidence to show why the appellant was on the car, and to establish motive for the homicide. This the trial judge repeatedly and with exemplary care explained to the jury. . . . It is, perhaps, unfortunate for the appellant that the first homicide was so interwoven with the second as to furnish a motive. It was for that purpose, and that purpose only, competent. . . ." It appears from the record in the case that the trial judge, in apt language and with great explicitness, explained to the jury that proof of the burglaries committed by appellant and Whitney previous to the killing of Chinn furnished no evidence of their guilt under the indictment for murder upon which they were being tried, but was only evidence to show the intent or motive with which appellant entered the house of Chinn, and could be considered by them for no other purpose. In view of this action of the court, and of the authorities in the opinion cited, we conclude that no error was committed in permitting the introduction of the evidence as to the burglaries committed by appellant and Whitney previous to the killing of Chinn.

We now come to the consideration of the only remaining question presented in appellant's behalf, viz., the alleged misconduct of counsel by whom he was represented upon the trial in the court below. It appears that the attorney who conducted the defense in that court was employed by the appellant's mother through the assistance of a priest of Louisville, Ky. It is not urged against the attorney that he is deficient in legal learning or lacking in experience. It is claimed, however, that he was so under the influence of intoxicants during the progress of the trial as to inter-

fere in part, at least, with the discharge of his duty to his client, and that when the case was ready for argument to the jury he was not in condition to proceed with the argument, for which reason it was deferred by the court until the following day, when he appeared and addressed the jury, but left the city of Lexington after the conclusion of the argument. These alleged facts do not appear from the record of the trial, but altogether from the affidavits of appellant, his brother, and one other person, which were filed in support of the motion and grounds for a new trial. So we find that the alleged misconduct of the appellant's counsel was brought to the attention of the lower court for the first time in the motion for a new trial; and by section 281, Cr. Code, it is provided that such errors as are presented for the first time in the motion for a new trial are not subject to exception, nor can they be considered by this court. It would seem, therefore, that this court is without power to review the action of the lower court in refusing a new trial upon the ground now urged by appellant. Kennedy v. Com., 14 Bush, 340; Brown v. Com., 14 Bush, 398. While section 11 (Bill of Rights), Const. Ky., provides that "in all criminal proceedings the accused has the right to be heard by himself and counsel . . ." it is his right to select his counsel. The court may appoint counsel for him, and must do so, where a felony is charged, if he fails to select or employ one of his own choosing. But in this case the appellant had counsel of his own or of his mother's selection. The court had the right to assume, in the absence of complaint from him, that he was satisfied with his counsel; and it is well-nigh incredible that he and his elder brother, who was with him throughout the trial, should have suffered the alleged misconduct of his counsel, to the extent set forth in their affidavits, without complaint

to the court, when such complaint would have resulted in the appointment by the court of other or assistant counsel to represent him, as was done after the departure of the counsel who conducted the defense upon the trial before the jury. It does not appear from the affidavits as to the alleged misconduct of appellant's counsel that he was unfit to conduct the examination of appellant's witnesses, or the cross-examination of those introduced by the Commonwealth. Upon the contrary, the bill of evidence shows that that work was efficiently performed by the counsel. If, as stated in the affidavits—though that fact does not appear from the court proceedings—the court was adjourned for a day to enable appellant's counsel to get in proper condition to address the jury, we must take it for granted that, if at any other time during the trial his condition had been such as to convince the trial judge that he was too much intoxicated to properly represent his client, he would have suspended the trial for the time being, to enable him to become duly sober. The record manifests the admirable care, ability and fairness with which the case was conducted by the trial judge, and we are unable to find in it any convincing evidence that he suffered such misconduct on the part of appellant's counsel as is complained of.

The instructions to the jury clearly and fairly presented the whole law applicable to the case, and the evidence established beyond all reasonable doubt the appellant's guilt. It is immaterial whether the shot which deprived A. B. Chinn of his life was fired by appellant or Whitney. According to the evidence, they were accomplices in the perpetration of the crime, and both present when it was committed; and, if so, they are equally guilty.

Great stress has been placed by counsel upon appellant's youth. Whether he is 15 years of age, as he testified upon

the trial, or 17, as he informed the officers when arrested, it is a matter of profound regret that one. so young should come to such an untimely end, but the atrocity of the crime with which he is charged, and the circumstances attending its perpetration, left no hope of his being visited with any. thing less than capital punishment at the hands of the jury. And as, upon the whole case, we find no error of law by which the substantial rights of the appellant have, in our opinion, been prejudiced, it is our painful, though imperative duty to sustain the judgment of conviction, and it is hereby affirmed.

Whole court sitting.

Petition for rehearing by appellant overruled.