## Commonwealth v. Gabbard.

(Decided October 12, 1923.)

### Appeal from Owsley Circuit Court.

1. Homicide—Conspirators to do Unlawful Act Liable for Killing by One.—If several persons conspired to do an unlawful act, and another was killed in the prosecution of the common object by

one of them, the other conspirators are alike guilty of homicide, as they are each responsible for the probable and natural consequences of, and those things incidental to, the execution of the common purpose, even though they were not intended by the parties as a part of the original design.

2. Homicide—Evidence Held to Warrant Finding of Conspiracy to do Unlawful Act and Warrant Submission to Jury.—In a prosecution for homicide, evidence held to warrant an inference that there was a conspiracy to do the unlawful act of taking deceased from her home for immoral purposes, and that in the course of prosecuting the common purpose one of the conspirators shot and killed her.

CHAS. I. DAWSON, Attorney General, THOS. B. McGREGOR, Assistant Attorney General, and C. W. NAPIER for appellant.

C. B. JOHNSON and RYLAND C. MUSICK for appellee.

OPINION OF THE COURT BY JUDGE MOORMAN—Certifying the law.

On the first appeal of this case the judgment was reversed because the lower court refused to instruct the jury peremptorily to find the defendant not guilty. Gabbard v. Commonewalth, 193 Ky. 460. On the return of the case and its resubmission to the grand jury a new indictment was returned, charging that defendant and his co-defendants therein, five in number, entered into a conspiracy to do the unlawful act of taking Bessie Allen from her home for immoral purposes, and in the course of prosecuting their common purpose shot and killed her. Separate counts in the indictment charged each of the defendants with having shot her, and the others with aiding and abetting.

Grover Gabbard was tried on this indictment, and at the conclusion of the evidence the trial court directed the jury to return a verdict of not guilty, upon which judgment was rendered. The Commonwealth has appealed for a certification of the law.

A detailed statement of the evidence on this trial is unnecessary to a determination of the case, since it is in many respects similar to that introduced on the first hearing. However, there is a difference in the legal effect of the evidence in relation to the respective charges. Besides, the testimony given by Annie Smith and Norman Hutchinson as to the circumstances under which the deceased left her home, the night that she was shot, is different in some of its essential features from their testi-

mony as reported on the first trial. The witnesses for the defense on this trial gave substantially the same testimony as they gave at the former trial. But the question is, was the changed testimony, with that given by the witness Sandlin, as it related to the new charge, sufficient to take the case to the jury?

It is a rule of general application that if several persons conspire to do an unlawful act, and another is killed in the prosecution of the common object, the conspirators are alike guilty of homicide, as they are each responsible for the probable and natural consequences of and those things incidental to the execution of the common purpose, even though they were not intended by the parties as a part of the original design. Powers v. Commonwealth, 110 Ky. 386, and authorities there cited. This rule was recognized and announced by this court in the first appeal of this case, although the question as it pertained to the subject matter of that appeal was not before the court for determination. By an application of this rule to the facts in evidence the law must be certified.

The evidence for defendant shows that Robert Sandlin killed Bessie Allen. Sandlin did not testify on the first trial, but on this trial he testified that he fired three shots from his pistol at only a few steps distant from the place where defendant and some people he did not recognize were standing, and that he heard a woman scream; and also that he did not shoot until he had first been struck by a stone and until a shot had been fired at him from the place where the accused and his companions were standing. In addition to this testimony it appears from the statements made by Norman Hutchinson that Bessie Allen was practically forced to leave her home with the accused that night; that the accused was in the room with a pistol and was urging her to leave with him; that he took hold of her arm and pulled her to the door, and Wood Baker, who was standing outside the door, threatened to kill her and the other occupants of the house if she did not go; that she had no coat and appellant had Baker give her his coat, and she went out the door weeping. This evidence, with the other circumstances disclosed in the record, authorized the inference that there was a conspiracy between defendant and those outside the house, including Sandlin, to force the girl to leave the house and have illicit relations with them.

It is true that the defendant's evidence tends to show that the girl requested to be allowed to accompany him to a place of safety, and, further, that there was no meeting with Robert Sandlin at the swimming hole by appointment, and necessarily, therefore, no understanding or agreement prior to their meeting to visit the home of Bessie Allen and compel her to leave her home and go into the woods with them for immoral purposes. But we must look to all the evidence, and the statements of Norman Hutchinson, with the testimony to the effect that the object of going to the Smith woman's home for immoral purposes was discussed at the swimming hole, are some evidence of a common understanding among the parties. It is a significant circumstance that both Gabbard and Sandlin, as well as Wood Baker and other friends of Gabbard, repaired to the home of Anne Smith, where Bessie Allen was staying, and Gabbard and Wood Baker went into the house. According to the witness Hutchinson, Gabbard wanted the girl to go with him. He exhibited a pistol and whiskey and pulled the girl to the door, and Baker threatened to kill them all if she did not go, and she went out weeping and those outside left, too. Appellant's evidence shows that Sandlin was just outside the house when the girl left.

The facts referred to, with the subsequent meeting of Gabbard with his friends and Sandlin's joining them later, might well warrant the belief that these latter meetings were arranged to carry out their predetermined purpose. It seems to us, therefore, that there was sufficient evidence to go to the jury as to a conspiracy formed by the accused and his associates, including Sandlin, to take the girl from her home for the purpose of compelling her to have immoral relations with them.

That Bessie Allen did leave her home in company with Gabbard, and there was a meeting of all of the parties a short distance therefrom and the girl was killed, is undenied. It remains, then, to be determined whether the evidence is such as would justify a jury in believing that the shooting of the girl was incidental to the common design and one of its probable and natural consequences. The proof for defendant shows that Sandlin shot the girl because she refused to have illicit intercourse with him, which, if the conspiracy existed, was, according to the Commonwealth's evidence, the very purpose for which it was formed. Furthermore, Sandlin's testimony is that he

was not the only person who fired a pistol at the time the girl was wounded, and, while the evidence as a whole conduces to show that she was wounded by the shots from his pistol, his evidence tends to corroborate the view that there was a conspiracy formed by the parties to commit the unlawful act charged, in pursuance and as a natural consequence of which Bessie Allen was killed.

Under this view of the evidence it is our opinion that the case should have gone to the jury. The law is so certified.