## GILCHRIST v. COMMONWEALTH.

Court of Appeals of Kentucky.

Nov. 9, 1951.

Rehearing Denied March 14, 1952.

Harris, Drury & Wathen, Morganfield, Louis P. McHenry, Hopkinsville, James A. Crumlin, Louisville, for appellant.

A. E. Funk, Atty. Gen., Zeb A. Stewart, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

Upon a trial in the Union Circuit Court, Berthenia Gilchrist, a Negro, was found guilty of murder and sentenced to life imprisonment. Her main contention, on appeal to this Court, is that the lower court should have sustained her motion to quash the indictment, based on proof of systematic exclusion of Negroes from appointment as jury commissioners, and from selection as grand and petit jurors, in Union County.

On a former trial for the same offense, appellant was convicted of manslaughter and sentenced to five years' imprisonment. That judgment was reversed because there was uncontroverted proof that Negroes had been systematically and arbitrarily excluded from the jury lists of Union County. Gilchrist v. Com., 311 Ky. 230, 223 S.W.2d 880. The proof in that case was that during the memory of living men no Negro had ever been drawn, selected, summoned or served as a grand or petit juror in the state courts in Union County, although some had been summoned and served in Federal Court. The only evidence offered by the Commonwealth to overcome this proof of exclusion was the affidavit of one of the jury commissioners to the effect that the commissioners had followed the instructions of the circuit judge in filling the wheel with names taken from the tax lists; the judge had not instructed the commissioners to exclude Negroes; the commissioners did not mention or consider the question of color in selecting the names to go in the wheel; and as far as the affiant knew, the names of some Negroes "could have been" placed in the wheel because affiant did not personally know all the persons whose names were put in the wheel.

Following the reversal of the first conviction, a new indictment was found, and the case was set for trial at the February 1951 term of court. On motion of the defendant, the case was continued to the March term. Upon the case being called for trial, the defendant moved to quash the indictment, on the ground above indicated, and filed supporting affidavits. These affidavits were confined to the appointment of jury commissioners and selection of grand jurors, and stated that in the last 50 years no Negro had ever been named as a jury commissioner or had ever served as a grand juror in Union County. The affidavits further stated that the ratio of Negro population to white population in the county was one to six, but there was no statement as to the ratio of Negro housekeepers to white housekeepers (see KRS 29.010 and 29.020), or the ratio of Negro to white names on the tax lists (see KRS 29.070). The only reference to petit jury service was in the motion of the defendant, in which it was stated that no Negro had ever been selected or impanelled to serve on a petit jury, except that one Negro was drawn from the wheel for the March 1951 term, and was excused from service because he was a schoolteacher; and except that six Negroes had been specially summoned by order of the circuit judge (not from the jury wheel), for service at the February 1951 term, but had not served.

In opposition to the motion to quash the indictment, the Commonwealth offered the affidavits of the three jury commissioners, and of the circuit court clerk. The affidavits of the jury commissioners were that, in filling the jury wheel from which the grand jury and petit juries for the terms in question were to be selected: (1) They were instructed specifically by the circuit judge not to discriminate against any person on account of race or color; (2) they used both the white and colored tax lists in selecting names to put in the wheel; and (3) the names of several Negroes were selected from the tax lists and placed in the wheel. The affidavit of the circuit court clerk stated that one of the persons, whose name was drawn for petit jury service at the March

1951 term, was a Negro, but that he was excused and did not serve.

In approaching the question of whether there has been such systematic exclusion of Negroes from grand and petit jury service as to deprive the appellant of her constitutional rights, we necessarily are concerned with how the grand and petit jurors were selected in Union County in 1951. The fact that for 50 years prior to 1951 there was a practice of arbitrary and absolute exclusion cannot be availed of by the appellant if in 1951 that practice was abandoned and the grand jury by which she was indicted, and the petit jury by which she was tried, were selected with a good faith disregard of race or color.

Concerning what happened in 1951, we have the affidavits of the jury commissioners that they were instructed specifically by the circuit judge not to discriminate on account of race or color; that they used both the white and colored tax lists in selecting the names; and that the names of several Negroes were placed in the wheel. There is also the admitted fact that the name of one Negro was drawn from the wheel.

It must be remembered that the jury commissioners, in selecting the names to be placed in the wheel, are required by statute to "carefully select from the intelligent, sober, discreet and impartial citizens, resident housekeepers in different portions of the county," the specified number of names. KRS 29.070. The fact that one-sixth of the people of Union County are Negroes does not mean that the jury commissioners, in order to observe in good faith the constitutional rights of Negro citizens, must place the names of Negroes in the wheel in the proportion of one to six. Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692. Disproportionate percentages might perhaps be some evidence on the question of exclusion, but at the very least the percentage of Negro *housekeepers* to white *housekeepers* would need to be established, and the factor of concentrations of Negro population in particular sections of the county would have to be weighed in the light of the requirement of the statute that the names be selected from different portions of the county. Also, the respective

proportions of names on the tax lists would be important. In any event, a disproportionate percentage among the first jury panels drawn from the wheel would not conclusively establish that such percentage prevailed as to all the names in the wheel, since the drawing depends on chance.

In reversing the former conviction of Berthenia Gilchrist, this Court had before it uncontroverted evidence of systematic and absolute exclusion. Gilchrist v. Com., 311 Ky. 230, 223 S.W.2d 880. We relied on Hale v. Commonwealth of Kentucky, 303 U.S. 613, 58 S.Ct. 753, 82 L.Ed. 1050, in which, likewise, the evidence of exclusion was uncontroverted. In Patton v. State of Mississippi, 332 U.S. 463, 68 S.Ct. 184, 92 L.Ed. 76, the state made no contention that its officers had abandoned the old jury selection practices. However, in Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692, there was proof that the state was making a good faith effort to correct the practices that had been condemned in Hill v. State of Texas, 316 U.S. 400, 62 S.Ct. 1159, 86 L.Ed. 1559, and the Supreme Court held that the fact two Negroes had served on the grand juries, in a county in which Negroes constituted 15 percent of the population, was sufficient to overcome the charge of systematic exclusion.

We are of the opinion that the affidavits of the jury commissioners stating that they took names from both the white and the colored tax lists, and placed the names of several Negroes in the wheel, was sufficient to overcome the prima facie case of exclusion established by the proof offered by the defendant that no Negro had ever served on a jury in Union County. See Washington v. State, 213 Ark. 218, 210 S.W.2d 307; certiorari denied, 335 U.S. 884, 69 S.Ct. 232, 93 L.Ed. 423. The mere fact that only one of the 96 persons, whose names were drawn from the wheel filled by these jury commissioners, was a Negro, is not sufficient to show that the commissioners were practicing evasion.

Whether the action of the jury commissioners involved in this case was merely a temporary expedient to meet the particular situation, or was the beginning of a good faith effort on the part of Union County to

depart from its former policy of exclusion, is a question that time alone can answer.

 The appellant makes some contention that her rights were violated as a result of systematic exclusion of Negroes from appointment as jury commissioners. Her attorneys cite no authority in support of that contention. It must be remembered that the jury commissioners are appointive *officers,* in the selection of which the circuit judge exercises sole discretion. The rule concerning systematic exclusion cannot be extended to the selection of public officers.

██ There was evidence that the jury commissioners put more names in the jury wheel than authorized by KRS 29.070, and appellant contends that this was grounds for quashing the indictment and for discharging the petit jury panel. This Court held otherwise in May v. Com., 294 Ky. 308, 171 S.W. 2d 465, which case is controlling.

██ Other claimed grounds of error are: (1) Refusal of the court to grant a continuance asked for because of an absent witness; (2) failure and refusal of the court to furnish a stenographic reporter or to grant a continuance to enable the defendant's counsel to procure a reporter; and (3) prejudicial remarks by the Commonwealth's attorney.

None of these grounds of error were set forth in the motion and grounds for a new trial, and therefore, under the long established rule, they cannot be raised on appeal.

There is no claim that the evidence was not sufficient to sustain the verdict.

Judgment affirmed.