**Hassie Cane MARTIN, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

June 22, 1962.

As Modified on Denial of Rehearing
Sept. 28, 1962.

Darrell B. Hancock, Fowler, Rouse, Measle & Bell, Lexington, for appellant.

John B. Breckinridge, Atty. Gen., Ray Corns, Asst. Atty. Gen., Frankfort, for appellee.

STEWART, Chief Justice.

Hassie Cane Martin, appellant herein, was jointly indicted with Willie Gaines Smith by the Fayette County grand jury for the wilful murder of Olin Alexander. They were tried separately. Both were convicted and received the death sentence. Reversal is urged on these grounds:

(1) Appellant, a negro, was denied equal protection of the laws because only three

negroes were called as jurors at the term of court at which he was tried;

(2) The court erred in permitting C. Gibson Downing, an attorney of the Fayette bar, to assist the prosecution since he had previously represented the co-defendant Smith;

(3) The court erred in overruling his motion to exclude testimony relating to the theft of an automobile and the license plates from another car immediately prior to the commission of the offense of which he stands convicted;

(4) The court erred in overruling his motion for a directed verdict; and

(5) The court erred in overruling his objection to a question propounded by the Commonwealth's attorney.

The foregoing contentions will be considered in the order stated. Also, so as to avoid repetition in this opinion, the relevant portions of the evidence will be recited when it becomes necessary to furnish a factual background for the points discussed.

■ The record discloses three negroes were called as jurors for the term of court at which appellant was tried. Two of these actually performed jury duty though none served on the jury that convicted appellant. To sustain the position that he was discriminated against because more members of his race were not made available, appellant relies solely on the case of Gilchrist v. Commonwealth, 311 Ky. 230, 223 S.W.2d 880, wherein conviction of a negro woman for manslaughter was reversed for the reason that the proof (consisting only of affidavits) showed negroes were, at that term of court and had been for many years, systematically excluded from the jury lists in Union County. However, appellee calls to our notice that, on the second appeal to this Court of the Gilchrist case (see 246 S.W.2d 435), the conviction on a second trial was upheld because the evidence showed the trial court had made

a "good faith" effort to include negroes on the second jury panel.

Appellant has not disclosed the proportion of negroes to whites in Fayette County. Neither has he revealed the ratio of negro to white names on the last-returned tax commissioner's book or last-returned voter's registration book. See KRS 29.-045(3). In Akins v. State of Texas, 325 U.S. 398, 65 S.Ct. 1276, 89 L.Ed. 1692, the Supreme Court of the United States held that the fact two negroes had served on the grand juries, in a county in which negroes constituted 15 per cent of the population, was sufficient to overcome the charge of planned rejection. At the second trial of the Gilchrist case one of the ninety-six persons whose name was drawn from the wheel filled by the jury commissioners was a negro, in a county where the ratio of whites to negroes was six to one, and it was held this was not such a disparity in regard to negroes as to show the jury commissioners were practicing evasion.

It is readily apparent the fact situation in the first Gilchrist case is completely different from that in the case at bar. Certainly the second Gilchrist case is not authority for appellant's contention. It is our view no case has been made out which in any wise supports appellant's assertion that negroes are prohibited from performing jury duty in Fayette County, or that any discrimination in this respect has been resorted to in the past.

■ The next ground urged for reversal presents a novel problem for consideration. It raises the question of whether when two or more defendants are jointly indicted for the same offense and severance is obtained, counsel who has previously defended one is precluded from assisting in the prosecution of the other.

C. Gibson Downing, a practicing attorney of Lexington, was appointed to and did represent co-defendant Willie Gaines Smith at his trial. Thereafter, but prior to appellant's trial, Downing became associated

with the Commonwealth attorney's office as Commonwealth's detective and signified an intention to sit at the table of the prosecution during the trial. Appellant objected to Downing's participation in this case in this manner, but his objection was overruled after the trial court made a lengthy inquiry into the matter. This hearing reveals that Downing acquired no knowledge as a result of his participation in the trial of Smith that would disqualify him to represent the Commonwealth in the instant case. As a matter of fact the co-defendants had made and turned over to the Commonwealth written confessions, but each stated therein that the other had fired the fatal shot.

Appellant bases his contention on general rules of law concerning attorney-client relationships. He cites as pertinent this language from 5 Am.Jur., Attorneys at Law, sec. 66, p. 298:

"A former attorney for a defendant in criminal proceedings cannot, after withdrawing from the case, be permitted to associate himself with the prosecuting attorney to assist in the prosecution, if, by reason of his professional relations with the accused, he has acquired a knowledge of facts upon which the prosecution is predicated or which are closely interwoven therewith."

Our research has failed to bring to light any Kentucky case directly related to this issue. Nevertheless, decisions from other forums have been brought to our attention which are almost on all fours with the facts shown in the case at bar.

In Lewis v. State, 39 Okl.Cr. 119, 263 P. 473, 475, several defendants were jointly indicted for rape. Separate trials were given to each, and Lewis (the appellant in that case) was tried last. One R. D. Miller represented the other defendants at their trial. Prior to Lewis' trial, Miller was elected to and assumed the position of county attorney and, thereafter, assisted in the prosecution of Lewis, in spite of the latter's objection. In that case, as in the one before us, it was not claimed Miller ever conversed with, or obtained confidential information concerning, the defendant he assisted in prosecuting. Miller's conduct as a prosecutor was upheld, the court saying: "We do not perceive why the mere fact of employment of an attorney by a defendant jointly charged operates as a disqualification against his appearing against a codefendant. * * *" This holding was later reaffirmed in Thoreson v. State, Okl.Cr.App., 100 P.2d 896.

It clearly appears Downing never at any time had an attorney-client relationship with appellant. This being true, it would not have made any difference even if he had obtained confidential information from Smith, so long as he had not received such information from appellant himself; and it was shown appellant made no confidential communication to him. Therefore, we fail to perceive how appellant could have been prejudiced by Downing's conduct as outlined.

■ It is next insisted the trial court erred in overruling appellant's motion to exclude portions of appellant's confession regarding the theft of an automobile and the license plate of another car, both of which were stolen earlier during the evening in question. This contention is without merit.

The evidence reveals that appellant and his co-defendant Smith were drinking together in various Lexington taverns on the evening of March 18, 1960, and they were running low on money. Appellant testified Smith stated he knew where they could get some money, if they had a car. Appellant and Smith then went to a used-car lot where appellant had previously been employed, and appellant stole a 1958 Mercury. Appellant had taken a set of keys to this car while still working at the lot. This theft occurred about 9:30 p. m.

These two, with appellant driving, proceeded to another street where appellant

stole a license plate off a parked car and placed it on the Mercury. Later that night they went in this car to a liquor store at Smith's direction, where they robbed and killed the owner, Olin Alexander. The shooting happened about 11:30 p. m.

Appellant maintains that he stood indicted separately for the offense of theft of the car and the license plate and that evidence concerning these alleged crimes served no useful purpose, but, aside from that, only incited and inflamed the jury. He further claims the admission of this evidence violated the rule that a defendant may not be questioned concerning the commission of an independent offense.

The theft of the Mercury automobile was a prelude that led up to and made possible the robbery of the liquor store, which illegal act in turn culminated in the fatal shooting of Alexander. The stolen car was admittedly taken in order to perpetrate the felonious act of robbery and the abstracted license plate was placed on it to conceal its identity so that the two men could effectuate their escape without discovery.

Thus, each of these unlawful acts became part of a "whole transaction"; or, stated otherwise, the separate infractions became a series of connected events, each having a direct bearing upon the other and all being so interrelated as to form a single pattern of crime. The Court, in O'Brien v. Commonwealth, 115 Ky. 608, 74 S.W. 666, 668, in commenting on such a situation, said: "* * * the entire transaction wherein it is claimed the wrong in issue was done may be shown, though it includes, also, other crimes * * *."

Roberson's New Kentucky Criminal Law and Procedure (2d Ed.), sec. 1813, p. 1929, states on this point:

"* * * that evidence of other independent crimes are admissible 'when they are so interwoven with the one being tried that they can not well be separated from it in the introduc-

tion of relevant and competent testimony.'"

Appellant's next contention, namely, that he was entitled to a directed verdict is without merit.

He claims the only *competent* testimony, that of a 17-year-old girl who observed him and co-defendant Smith in the store immediately prior to the killing, merely proved his presence at the scene of the crime. She saw no gun being wielded and no harm being committed by him. His confession reveals that he ran from the store before the shooting, which statement was not contradicted by the Commonwealth. Accordingly, he contends the Commonwealth failed to prove any act of murder on his part, or any conspiracy with his co-defendant as far as murder was concerned.

Appellant was constructively present at the scene of the murder, as he was "in such contiguity as to enable him actually to render aid" in the perpetration of the crime. See Biggs v. Commonwealth, 196 Ky. 655, 245 S.W. 292. He and Smith both intended to commit robbery and both carried guns. Appellant knocked deceased to the floor during the robbery by a blow on the head with his gun. As stated in Baxter v. Commonwealth, 292 Ky. 204, 166 S.W.2d 24, 27: "He knew, or should have known, that in committing robbery with deadly weapons, death or injury of persons on the premises is likely to occur * *."

Appellant's acts come within the purview of the rule stated in 40 C.J.S. Homicide § 9, p. 843–844. It reads: "All who join in a common design to commit an unlawful act, the natural and probable consequence of which involves the contingency of taking human life, are responsible for a homicide committed by one of them while acting in pursuance of the common design, regardless of which one fired the fatal shot or delivered the fatal blow, * * *. Responsibility attaches al-

though the taking of life was not specifically intended or contemplated by the parties or involved in the plan * * *." See also Simpson v. Commonwealth, 293 Ky. 831, 170 S.W.2d 869; Commonwealth v. Gabbard, 200 Ky. 642, 255 S.W. 73.

Appellant was leaving the scene of the robbery with the loot, having taken the money from the cash register, when, as he testified, Smith shot Alexander. It is arguable that, since their preconceived scheme, that is, the robbery, had been consummated, appellant was not accountable for Smith's act of homicide which subsequently occurred. However, the evidence shows that the purpose they had in mind was not at the time completed, for appellant and Smith had planned to, and did, make their get-away in a car together. Furthermore, Smith's reason for slaying Alexander was, as appellant quoted him saying, ".* * * because he knew me", and this statement points up their common design to rob and then to escape without detection. See 40 C.J.S. Homicide § 9, p. 850.

There is sufficient evidence in the record to take to the jury the issue of whether the shooting was incidental to the common plan and was one of its probable and natural consequences. Appellant was not entitled to a directed verdict under the facts presented.

A final complaint centers around a question asked appellant by the Commonwealth's attorney, which was: "Did you sleep with the gun?" This inquiry was objected to upon the ground that it tended to incite or inflame the minds of the jury. We do not believe any harm resulted on this score. In reading the testimony, it is obvious that the Commonwealth's attorney was only trying to establish the time of day when appellant placed the pistol in his pocket.

Wherefore, the judgment is affirmed.