**Hassie Cane MARTIN, Petitioner,**

v.

**COMMONWEALTH OF KENTUCKY and Luther Thomas, Warden, Kentucky State Penitentiary, Respondents.**

**Civ. A. No. 4519.**

United States District Court
W. D. Kentucky,
Louisville.
July 29, 1963.

John P. Sandidge, James A. Crumlin, Louisville, Ky., for Hassie Cane Martin.

John B. Breckinridge, Ray Corns, Frankfort, Ky., for respondents.

SHELBOURNE, District Judge.

The petitioner, Hassie Cane Martin, is presently confined in the Kentucky State Penitentiary at Eddyville, Kentucky, under a judgment of the Fayette Circuit Court entered in October, 1960. At the April, 1960 session of the grand jury of that court an indictment was returned charging Martin and Willie Gaines Smith with the willful murder of Olin Alexander. Shortly after the indictment was returned, the court appointed members of the bar in Lexington as counsel to represent each of the Negro defendants. Darrell B. Hancock was appointed to represent Martin and C. Gibson Downing to represent Smith. Each of the defendants filed a motion for separate trial and for a change of venue. The motions for separate trials were sustained. Smith's motion for a change of venue was denied after the introduction of proof on the motion. The petitioner, Martin, withdrew his motion for a change of venue after his counsel attended the hearing on Smith's motion. The Commonwealth's Attorney elected to proceed to trial with Smith. In June, 1960, Smith was tried to a jury, found guilty and given the death penalty.

At the October, 1960 term of the Fayette Circuit Court, the petitioner was tried to a jury, was found guilty, and was also given the death penalty. Following the denial of his motion for a new trial, Martin prosecuted an appeal to the Court of Appeals of Kentucky in which the judgment of the Fayette Circuit Court was affirmed. The opinion of the appellate court, as modified on its denial of a petition for rehearing, was handed down September 28, 1962, and is reported as Martin v. Commonwealth, 361 S.W.2d 654. Martin's petition for a writ of certiorari was denied by the United States Supreme Court on January 21, 1963, 371 U.S. 969, 83 S.Ct. 553, 9 L.Ed.2d 540. January 29, 1963, the Governor of Kentucky by executive order directed the Warden of the Kentucky State Penitentiary to execute the death sentence on Friday, March 1, 1963.

February 27, 1963, there was received and filed in this Court a petition for a writ of habeas corpus and request for a stay of execution of the death sentence, together with an affidavit requesting leave to proceed in this Court in forma pauperis, as authorized by 28 U.S.C. § 1915(a). In view of the penalty imposed and the brief time remaining before the execution of the judgment of the Fayette Circuit Court, pursuant to the authority of 28 U.S.C. § 1915(d), the Court re-

quested John P. Sandidge and James A. Crumlin, members of the bar of this Court at Louisville, to represent the petitioner as counsel in this proceeding and they accepted the appointment.

February 27, 1963, the Court ordered that a writ of habeas corpus issue pursuant to 28 U.S.C. § 2243 and directed the Warden of the Kentucky State Penitentiary to produce the petitioner for a hearing on the writ in this Court on March 7, 1963. Under the authority of 28 U.S.C. § 2251, it was ordered that the execution of the judgment of the Fayette Circuit Court as to the petitioner be stayed. A copy of that order was served on the Warden by the United States Marshal for the Western District of Kentucky on February 28, 1963.

The grounds alleged by petitioner for the issuance of the writ of habeas corpus were that his rights guaranteed by the Fourteenth Amendment to the Constitution of the United States were violated in that

(1) The State discriminated against petitioner by deliberately and willfully excluding from the jury in the Fayette Circuit Court a Negro juror;

(2) The whole jury panel was selected from special class lists rather than from every adult resident of the county blindly, which was alleged to have produced a discrimination by excluding petitioner's "Peers—the tenant, the worker, the poor, the black," and

(3) Had a document, which the petitioner calls "Timely Reply," been allowed to go through the mails to the United States Supreme Court, that Court would have granted the petition for writ of certiorari to the Kentucky appellate court and would have ordered the petitioner's release.

March 6, 1963, the respondents filed a response denying that any Negro was excluded, willfully, intentionally or otherwise, from the jury panel called to try the petitioner, and denied that any constitutional right of the petitioner had been abused or abridged in any manner. It was affirmatively alleged that petitioner was accorded a fair and impartial trial and respondents asked that the writ be denied.

A hearing on the petition was had on March 7, 1963. A 186-page transcript of the testimony heard and proceedings had, together with a volume of the exhibits filed, is in the record here.

This case illustrates the fidelity and capability usually manifested by members of the bar who are called upon by the courts to represent indigent defendants. Following his appointment as counsel for Martin, Mr. Hancock attended the hearing and trial of petitioner's co-defendant, Smith, and obtained at his own expense a transcript of the testimony heard at that trial for which he paid $140.00. Mr. Hancock's testimony here is that he was frequently in consultation with his client, and the transcript of petitioner's trial in the Fayette Circuit Court shows that he capably represented him. The transcript of the State court proceedings was made available for use in the proceedings in this Court by the Clerk of the Court of Appeals of Kentucky.

After petitioner's trial in the Fayette Circuit Court and the decision of his case in the Kentucky appellate court, Mr. Hancock received two letters from Martin, which are filed as exhibits in the record here, expressing his gratitude for the efficient representation given him by Mr. Hancock. When the Court of Appeals of Kentucky affirmed the judgment of conviction in the Fayette Circuit Court, Mr. Hancock wrote to the petitioner advising him that in his opinion a rehearing in the Court of Appeals would be futile and that, unless directed by the court, he would not make further effort as counsel on his behalf.

At this juncture it should be stated that immediately after their appointment as counsel for petitioner by this Court both Mr. Sandidge and Mr Crumlin travelled some 200 miles to the penitentiary at Eddyville, Kentucky, for consultation with their client. They carefully inspected the records of the Fayette Circuit Court at Lexington, Kentucky, concerning Martin's trial, investigated the method of selection of juries by that

court, took the deposition of John B. De-Long, a deputy clerk of that court who was unable to attend the hearing here on account of illness, and filed a brief which represents a careful presentation of the case on behalf of petitioner.

Counsel for the petitioner in this Court submit the following contentions:

(1) Martin's constitutional rights under the Fourteenth Amendment were violated by the manner in which the trial jury was drawn.

(2) The presence of six bystanders on the panel from which the jury was selected violated petitioner's rights under the Fourteenth Amendment.

(3) Petitioner did not secure a fair and impartial trial as contemplated by the Fourteenth Amendment because colored jurors on the panel were excused without legal excuse.

(4) The hearing of evidence by the trial judge out of the presence of Martin violated his rights under the Fourteenth Amendment.

(5) Mr. Hancock's abandonment of the case while in the Court of Appeals of Kentucky deprived Martin of effective legal representation.

(6) The Warden of Kentucky State Penitentiary withheld from the mails a document filed in the record in this case and styled by petitioner "Timely Reply" which he attempted to mail to the Supreme Court after his petition for certiorari had been denied.

In the recent case of Townsend v. Sain, 372 U.S. 293, 312, 83 S.Ct. 745, 756, 9 L.Ed.2d 770, the Supreme Court said:

"State prisoners are entitled to relief on federal habeas corpus only upon proving that their detention violates the fundamental liberties of the person, safeguarded against state action by the Federal Constitution."

In Fay v. Noia, 372 U.S. 391, 411, 83 S.Ct. 822, 9 L.Ed.2d 837, the Supreme Court has said that the due process of law of the Fourteenth Amendment is not applicable to mere disorders or mere irregularities of procedure but to cases where the processes of justice are actually subverted.

The testimony of the Circuit Judge, the Commonwealth's Attorney, the Circuit Clerk, and Mr. Hancock indicates that the jury in Martin's case was selected in accordance with the custom and practice of long years standing in the Fayette Circuit Court. Mr. DeLong, the Deputy Circuit Clerk who acted as clerk at Martin's trial, stated that he had no recollection as to the selection of the jury in this particular case. But, he said that the custom was for the Sheriff to call the names of the persons constituting the panel of petit jurors for a particular day and the names of the jurors answering present were written on individual cards, then the cards were thoroughly shuffled before the jurors were called in each case. All persons charged with duty and responsibility in the selection of the jury in this case who testified here are in accord that the jury was selected at random from the panel.

It is undenied that three Negroes were on the panel of petit jurors for the October, 1960 session of trials in the Fayette Circuit Court. One was William Caulder, a blacksmith, who asked to be excused because the race meeting then in progress at Lexington provided a heavy and remunerative demand for his work; the Circuit Judge considered his reason sufficient to warrant the excuse. The second Negro on the panel was Newland Harbut, a cement finisher and construction worker, who asked to be excused because the seasonal nature of his work did not furnish him employment during the winter months and his request was granted. Jesse Johnson, the third Negro, was present in court when the jury was selected but his name was not called.

The testimony of Judge Bradley is that Negro jurors have been called and have served on the juries in the Fayette Circuit Court during his entire incumbency as Circuit Judge. He states that the jury commissioners were, at the time of this trial and prior thereto, specifically directed to select jurors from the voting and tax records without any dis-

crimination as to race, color or sex. There is no evidence in this case that there was any intentional or systematic exclusion of Negroes from the grand and petit juries in the Fayette Circuit Court.

No objection was interposed as to the method of selecting the jury, except an objection to the entire panel on the ground that only one colored man was called for jury duty. The objection was answered by the court with the statement that three Negroes had been summoned, appeared and two of them excused by the court, with the remaining Negro, Jesse Johnson, then present in court. While this objection appears to have been made in the chambers of the court after the jury was sworn, it is the testimony of Judge Bradley, Mr. Mansfield, the Commonwealth's Attorney, and Mr. Hancock that this proceeding was had prior to the time the jury was sworn. It is testified that this objection was made at the same time Mr. Hancock objected to the appearance for the Commonwealth of Kentucky of Mr. Downing, the attorney who represented Willie Gaines Smith in his trial in June, 1960. Mr. Downing's testimony was taken out of the presence of Martin in the court's chambers at the instance of Martin's attorney and on his motion.

■ The facts concerning Mr. Downing's appearance for the Commonwealth at the Martin trial were that, following the Smith trial, Mr. Downing was appointed Assistant Commonwealth's Attorney and that prior to his appointment he had not represented Martin or conferred wtih him at any time. Although he was called as a witness in the Smith case, Martin declined to testify on the grounds of self-incrimination. The confessions made by Martin and Smith, which were introduced in their trials without objection, show that each was accusing the other of the murder of Olin Alexander. There was nothing improper in Mr. Downing assisting the Commonwealth's Attorney in Martin's trial.

■ The second contention of petitioner's counsel relative to bystanders on the panel from which the jury was selected is lacking in merit. No objection

was made and the record is not clear, but K.R.S. 29.025 states that the fact that a person not qualified served on a grand or petit jury shall not be cause for setting the indictment or verdict aside, nor shall exception be taken to any juror for lack of qualification after the jury has been sworn.

The third contention with reference to two colored members of the panel being excused from jury service has been discussed in connection with petitioner's first contention.

In the case of United States ex rel. Jackson v. Brady, 4 Cir., 133 F.2d 476, 480 (1943), which is very similar to the case at bar, it is stated:

"* * * it is well established that a colored citizen charged with crime cannot claim as a constitutional right that his race be represented on the trial jury, and the mere absence of Negroes from the jury does not prove that they were excluded because of their race."

In his opinion in the Brady case, supra, Judge Soper quoted from the Supreme Court's opinion in Martin v. State of Texas, 200 U.S. 316, 26 S.Ct. 338, 50 L. Ed. 497, as follows:

"What an accused is entitled to demand under the Constitution of the United States, is that, in organizing the grand jury as well as in the impaneling of the petit jury, there shall be no exclusion of his race, and no discrimination against them, because of their race or color."

There is no evidence in this case that Mr. DeLong knew that Jesse Johnson was a Negro or that he was a member of the panel.

■ It has been shown here that the preponderance of the evidence disproves the contention of petitioner's counsel that his rights were denied by the taking of evidence out of his presence. The only evidence taken out of Martin's presence was taken in the chambers of Judge Bradley and it related only to Mr. Downing's representation of Smith and whether such representation disqualified him to assist the Common-

wealth's Attorney in the Martin trial. The evidence having been taken at the instance of Martin's counsel about a matter which did not affect the merits of his case, this is insufficient to infringe upon any constitutional right.

As to the fifth contention that petitioner was denied effective legal representation by Mr. Hancock's abandonment of the case while in the Court of Appeals of Kentucky, there is no law cited which required Mr. Hancock to represent Martin after the appellate court rendered its opinion affirming the judgment of the Fayette Circuit Court. In fact, Mr. Hancock's legal obligation under appointment of the court ceased at the termination of Martin's trial in the Fayette Circuit Court. Gilpin v. United State, 6 Cir., 265 F.2d 203 (1959); Gargano v. United States, 9 Cir., 137 F.2d 944 (1943); Lovvorn v. Johnston, 9 Cir., 118 F.2d 704 (1941), cert. denied 314 U.S. 607, 62 S.Ct. 92, 86 L.Ed. 488.

The sixth and last contention of petitioner's counsel that the Warden of Kentucky State Penitentiary violated Martin's rights under the Fourteenth Amendment by requesting him to change some of the language in the document styled "Timely Reply" is also without merit. The Warden did not refuse to mail the document but returned it to the petitioner suggesting that some of the language be changed. Martin did not return the document to the Warden or make any further request with respect to its being mailed.

The Court finds the facts in this case as above indicated, and holds as a final conclusion that petitioner's constitutional rights under the Fourteenth Amendment were not abridged as alleged in his petition and that the writ of habeas corpus issued in this action should now be dismissed.

IT IS THEREFORE ORDERED that the writ of habeas corpus issued in this action be and same is hereby dismissed.

## ORDER

On motion of the petitioner, the Court makes the following supplemental finding of fact:

In the original opinion of the Court of Appeals of Kentucky upon the appeal of the case of Martin v. Commonwealth of Kentucky, 361 S.W.2d 654, it was erroneously stated that a Negro actually served on the jury that tried appellant's (Martin) case and voted to return the verdict of death. The attention of that court was called to the fact that this was a misstatement and that portion of the opinion was withdrawn and omitted from the final opinion of the court as adopted and published.

The petitioner's motion for further or additional findings of fact is overruled for the reason that the Court's opinion and findings adequately show the proceedings had at the trial in the Fayette Circuit Court.